ALLEN F. LABAY AND GENEVIEVE M. LABAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3868–69.    Filed October 5, 1970.

*Harry G. Dippel*, for the petitioners.
*W. Read Smith*, for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for the years 1966 and 1967 in the amounts of $325.02 and $336, respectively. The issue is whether petitioners are entitled to deductions for dependency exemptions for Allen F. Labay's

two minor children, by a prior marriage, who were in the custody of their mother during the years in question. For the year 1967 we must consider the effect of section 152(e).[1]

FINDINGS OF FACT

Some of the facts were stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Allen F. Labay and Genevieve M. Labay are husband and wife who filed their joint Federal income tax returns for 1966 and 1967 with the district director of internal revenue at Austin, Tex. They were residents of Houston, Tex., at the time they filed their petition herein. "Petitioner" shall refer to Allen F. Labay.

Petitioner was divorced from Deana Frances Labay under a decree of the 151st Judicial District Court of Harris County, Tex., on September 24, 1956. Under the terms of the decree, custody of the minor children, Allen Dean Labay, a boy born October 8, 1952, and Morgan Lea Labay, a girl born October 27, 1955, was granted to the mother, now Deana Frances Sherman.

Pursuant to the divorce decree, petitioner paid through the Probation Department of Harris County, Tex., child support in the amount of $1,925 in 1966 and $1,820 in 1967.

Following a contempt hearing on December 14, 1964, the 151st Judicial District Court of Harris County, Tex., entered an order on February 10, 1965, directing petitioner to pay $750 in arrearages through the Harris County Probation Department. Pursuant to that order, petitioner paid to Deana Frances Sherman $120 principal and $18.96 interest in 1966, and $120 principal and $12.96 interest in 1967.

The gross income reported on the returns of Darrell R. and Deana F. Sherman was $12,818.61 in 1966 and $13,082.65 in 1967.

The total support for Allen Dean Labay and Morgan Lea Labay in 1966 was as follows:

| Item | Allen | Morgan Lea |
|---|---|---|
| Lodging, utilities | $428. 57 | $428. 57 |
| Food | 525. 00 | 525. 00 |
| Clothing, cleaning, jewelry | 645. 33 | 857. 51 |
| Medical, dental | 175. 70 | 174. 20 |
| Grooming | 18. 00 | 80. 50 |
| Entertainment, allowance | 433. 86 | 221. 45 |
| Transportation | 57. 44 | 57. 44 |
| School expenses | 67. 92 | 67. 92 |
| Four-H | 100. 05 | 100. 05 |
| Babysitters | 19. 50 | 19. 50 |
| | 2, 471. 37 | 2, 532. 14 |

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

The total support for Allen Dean Labay and Morgan Lea Labay in 1967 was as follows:

| Item | Allen | Morgan Lea |
|---|---|---|
| Lodging, utilities | $419. 10 | $419. 10 |
| Food | 525. 00 | 525. 00 |
| Clothing, cleaning, etc | 533. 36 | 661. 06 |
| Medical, dental | 209. 64 | 115. 17 |
| Grooming | 18. 00 | 137. 00 |
| Entertainment, allowance | 411. 12 | 155. 96 |
| Transportation | 61. 23 | 61. 23 |
| School expenses | 63. 46 | 68. 09 |
| Gifts | 50. 00 | 50. 00 |
| | 2, 290. 91 | 2, 192. 61 |

Petitioners provided less than half of the children's total support in 1966 and 1967.

### OPINION

At issue are the dependency exemptions for the two children in 1966 and 1967. The 2 years straddle a change in the law regarding the "support test" for children of divorced parents, so it is necessary to discuss each year separately. But we will first dispose of two preliminary issues.

First, petitioner offered in evidence, for the purpose of demonstrating inconsistencies in Deana Sherman's testimony and impeaching her credibility, certain documents submitted by her to respondent and other documents prepared by respondent during consultation with her. Treasury Department Form 2038 "Information to Support Exemption Claimed for Dependent on Federal Income Tax Return," for 1966 and 1967, and other forms executed by an auditor entitled "Itemized Statement of Expenditures on Which Claim of Dependent's Support is Based," for 1966 and 1967, are involved. We conclude that the documents are admissible. For the year 1966, the document is entitled to little, if any, weight because Deana Sherman was given no opportunity to testify with respect to it. For the year 1967, the audit figures had been made available to petitioner's counsel for the purpose of eliciting her testimony and she was questioned about the figures in some detail. Mrs. Sherman did explain the discrepancies between her testimony and the document, saying that "when I went back for a more thorough investigation, then I had all of my cancelled checks." See sec. 152(e) (3).

Second, during 1966 and 1967 petitioner paid current child support, plus arrearages, under court order. He contends that the arrearages should be counted as support in 1966 and 1967. In *Thomas Lovett*, 18 T.C. 477 (1952), we held that arrearages paid in addition

to current child support did not count as child support in the year of payment. In *Frank P. Gajda*, 44 T.C. 783 (1965), we held that where payments did not exceed current child support obligations, the amount of the taxpayer's contribution would not be reduced by arrearages if the money was actually spent for support. The rule in *Lovett* prevents a father from claiming exemptions, to which he might not ordinarily be entitled, by shifting child support from one year to another. On the other hand, the *Gajda* case provides that he will not lose the exemption merely because he is in arrears. The contrary rule might discourage him from making current payments. Petitioner herein falls under the *Lovett* rule. His arrearage payments were not child support in 1966 and 1967.

1. *The Law Applicable to the Year 1966.*—Section 152(a),[2] which was controlling in 1966, defined a dependent as a child or other specified person, "over half of whose support * * * was received from the taxpayer." Thus, it is petitioner's burden to establish not only what amount he contributed toward the support of his children, but he must also show in some way that it exceeded one-half of their total support. *Aaron F. Vance*, 36 T.C. 547, 549 (1961). Ordinarily in a case such as this, where only the father is before the Court, he faces the exceedingly difficult, if not impossible, burden of establishing total support through the uncooperative mother. Where respondent has allowed the dependency exemptions to the mother, there is no compulsion (except by subpoena) for the mother to appear as a witness. The petitioner in this case had the mixed fortune of having his former wife appear as a witness. Fortunately, he was able to establish total support; but unfortunately for him the total support shown was more than twice the amount of his contribution.

2. *The Law Applicable to the Year 1967.*—Section 152(e),[3] which applies in 1967, was enacted partly because the Internal Revenue Serv-

---

[2] SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer) :

    (1) A son or daughter of the taxpayer, or a descendent of either,

[3] SEC. 152(e). SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ET CETERA.

    (1) GENERAL RULE.—If—

        (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and

        (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated under the provisions of paragraph (2), as having

ice found itself "in the position of an unwilling arbiter between the contending parties * * * hampered by the provisions of existing law which prohibit disclosure to either parent by the Service of information concerning the support (and the amount thereof) which the other claims to have contributed." H. Rept. No. 102, 90th Cong., 1st Sess. (1967), 1967–2 C.B. 591. In addition to being unjust to taxpayers who were unable to establish total support, the existing law imposed a heavy administrative burden upon respondent. As many as 5 percent of the cases handled at the informal conference level involved primarily this issue. H. Rept. No. 102, *supra* at 592.

In the case of children of divorced parents, section 152(e) provides as a general rule that the parent with custody is entitled to the dependency exemption. There are two exceptions. The one which concerns us in this case is section 152(e)(2)(B), which provides that the parent not having custody is entitled to the exemption if—

(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all such children) for the calendar year, and

(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.

---

received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody).

(2) SPECIAL RULE.—The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

(A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and

(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or

(B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and

(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.

For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.

(3) ITEMIZED STATEMENT REQUIRED.—If a taxpayer claims that paragraph (2)(B) applies with respect to a child for a calendar year and the other parent claims that paragraph (2)(B)(i) is not satisfied or claims to have provided more for the support of such child during such calendar year than the taxpayer, each parent shall be entitled to receive, under regulations to be prescribed by the Secretary or his delegate, an itemized statement of the expenditures upon which the other parent's claims of support is based.

(4) EXCEPTION FOR MULTI-SUPPORT AGREEMENT.—The provisions of this subsection shall not apply in any case where over half of the support of the child is treated as having been received from a taxpayer under the provisions of subsection (c).

(5) REGULATIONS.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this subsection.

Where the application of section 152(e)(2)(B) is involved, section 152(e)(3) provides for the exchange of information between the parents.

We think section 152(e)(2)(B) was not designed primarily with litigation in mind, but rather to provide rules to facilitate the administrative disposition by the Internal Revenue Service of dependency exemptions claimed for children of divorced parents. Congress obviously wanted to encourage the finality of administrative action taken by the Commissioner in such disputes.

It is clear that the requirements of section 152(e)(1) are met in this case. The parties and this Court are satisfied that petitioner also meets the requirements of section 152(e)(2)(B)(i) by having provided more than $1,200 for support, "regardless of the number of children." H. Rept. No. 102, *supra* at 591.

Having met the requirements of section 152(e)(1) and section 152(e)(2)(B)(i), the petitioner, as the parent not having custody of the children, is entitled to the exemptions if his former wife, the parent having custody, does not "clearly establish" that she provided a greater amount for the children's support. Section 152(e)(2)(B)(ii) appears to create a presumption in favor of the parent not having custody, and shifts the burden to the parent having custody to "clearly establish" that she provided more for child support than the parent not having custody. Where, as here, the parent having custody of the children is not a party to the Tax Court proceeding, the burden, in essence, falls upon the respondent to overcome the presumption favoring the parent not having custody. The extent of this burden will be considered later.

3. *Proof Relating to Dependency Exemptions for the Years in Issue.*—For the year 1966 the burden was on the petitioner to prove that he provided more than half of the children's total support; and for the year 1967 the question is whether Deana Sherman's testimony does "clearly establish" that she provided more for the support of the children than the petitioner did. Her testimony is crucial to both years.

During 1966 and 1967 Deana Sherman was employed by the Internal Revenue Service as a taxpayer's service representative. Part of her job consisted of advising taxpayers as to what information and documents might be required of them. At trial Deana Sherman had groups of checks to substantiate many of the support items to which she testified. Although petitioner's counsel made no effort to offer these checks in evidence, and respondent did not do so, the checks served to refresh Mrs. Sherman's recollections. Despite her rather remarkable efforts at recordkeeping, Deana Sherman could give no more than estimates, unsupported by checks-in-hand, on a few support items. In addition,

she had some difficulty in identifying certain checks as representing specific expenditures for a particular child.

In short, Deana Sherman, because of her job, was well-informed and conscientious about her recordkeeping. Yet some of the amounts of her claimed support expenditures are nevertheless estimates. Since the petitioner provided considerable amounts for the support of the children, the question of whether he provided over half of their support depends upon our acceptance or rejection of Mrs. Sherman's estimates. We have accepted them because we regard her testimony as credible. Accordingly, we hold that petitioner did not carry his burden of proving that he supplied more than half of the children's support in 1966. To the contrary, we think the evidence shows that Deana Sherman and her husband supplied over half of the children's support in 1966.

For the year 1967 the petitioner contends that respondent and Deana Sherman face a greater burden of proof. He argues that to "clearly establish" that Mrs. Sherman supplied more support than he did, she must provide "clear and convincing evidence." See H. Rept. No. 102, *supra* at 592. Presumably petitioner invokes the "clear and convincing" standard to require the sort of "strong proof" that respondent must produce in civil tax fraud cases.

The circumstances of this case illustrate the impracticability of a "clear and convincing" standard in this area of the law. Mrs. Sherman was a well-informed and candid witness whose testimony was supported by checks and other documents. Despite this, the result in this case turns upon our willingness to accept her unsubstantiated estimates on a few of the support items. In this respect she does not differ from the typical witness in a dependency exemption case. The problem is that it was virtually impossible for Mrs. Sherman, or anyone else similarly situated, to keep documentary records of many kinds of child support expenditures. Items such as food and entertainment are often, if not always, cash expenditures. The fair rental value of lodging is necessarily an estimate. And even where documentation is possible, few persons have the time, knowledge, or patience to attempt it.

The broad scope of section 152(e) does not support a standard of proof by "clear and convincing" evidence. The general rule, set forth in section 152(e)(1), is that the parent with custody shall have the exemption. Section 152(e)(2)(B) is an *exception* to the general rule. Petitioner's reading of the exception would mean that once the parent not having custody had met the arbitrary $1,200 requirement (regardless of the number of children), the parent with custody would have a very difficult burden. The exception would tend to swallow the rule.

Section 152(e)(2)(B)(ii) can best be understood when considered with section 152(e)(3). Together they provide that once the parent not having custody shows that he has furnished at least $1,200 for child

support during the taxable year, the parent with custody will have to come forward. Usually the respondent will have to bring in the parent with custody as his witness to rebut the presumption in favor of the parent not having custody. The purpose is to eliminate cases in which the father can show substantial child support, but cannot establish the amount of total support. At that point the mother should come forward and establish a reasonable range of total support by substantial evidence. No purpose would be served by placing a more difficult burden upon her, simply because proof in dependency exemption cases does not lend itself to precision or exactness.

We reiterate that since Deana Sherman is not a party to this proceeding, the burden under section 152(e)(2)(B)(ii) of overcoming the presumption in favor of petitioner, the parent not having custody, falls upon the respondent. It seems highly unlikely that Congress could have intended to impose upon respondent (and indirectly upon the parent having custody) a stringent and extraordinary burden. Proof by clear and convincing evidence has been traditionally applied by this Court to cases involving the 50-percent addition to tax for fraud. See *M. Rea Gano*, 19 B.T.A. 518, 532–533 (1930).

It is our view that the common import of the words "clearly establish," as used in section 152(e)(2)(B)(ii), requires only that it be shown by a *clear preponderance* of the evidence that the parent having custody of the children provided a greater amount for their support than the parent not having custody. A "clear preponderance" of the evidence means something more positive and explicit, as opposed to inferences to be drawn from ambiguous and equivocal proof. In other words, it is evidence that tends directly to establish the point to which it is adduced, instead of leaving it a matter of conjecture or presumption. It is apparent that Congress intended to impose a burden greater than a mere preponderance of the evidence by using *in the statute* the descriptive word "clearly" preceding the word "establish." While we realize that the legislative history refers to "clearly establish" as meaning "clear and convincing evidence," we think unyielding adherence to such language would, for the reasons we have stated herein, result in a construction which would be impractical and at variance with the general policy of the statute as a whole.[4] *United States* v. *Amer. Trucking Ass'ns.*, 310 U.S. 534, 543–544 (1940).

[4] As Lord Justice Denning said in *Seaford Court Estates. Ltd.* v. *Asher,* [1949] 2 K.B. 481, 499 :

It would certainly save the judges trouble if Acts of Parliament were drafted with divine prescience and perfect clarity. In the absence of it, when a defect appears, a judge cannot simply fold his hands and blame the draftsman. He must set to work on the constructive task of finding the intention of Parliament * * *. Put into homely metaphor it is this : A judge should ask himself the question : If the makers of the Act had themselves come across this ruck in the texture of it, how would they have straightened it out? He must then do as they would have done. A judge must not alter the material of which it is woven, but he can and should iron out the creases.

On this record we are persuaded that the evidence clearly establishes that Deana Sherman provided more than Allen Labay for the support of their children in 1967. Therefore, the petitioners are not entitled to the dependency exemptions for the two children in that year.

4. *Claimed Denial of Due Process.*—On brief the petitioners contend that if they are not allowed the dependency exemptions for the Labay children for the years 1966 and 1967, such disallowance will result in a denial of their rights under the due process and equal protection clauses of the 5th and 14th amendments to the Constitution of the United States. Petitioners do not give any grounds or reasons for this assertion. No constitutional issue was raised by them in their pleadings or at the trial of this case. This Court has frequently held that it cannot and will not consider a constitutional issue raised for the first time on brief. See *Estate of Mary Redding Shedd*, 37 T.C. 394 (1961) ; *Max Isenbergh*, 31 T.C. 1046 (1959) ; and *Calvert Iron Works, Inc.*, 26 T.C. 770 (1956). In any event the contention lacks merit. Deductions, including dependency exemptions, are allowed as a matter of legislative grace. *New Colonial Co.* v. *Helvering*, 292 U.S. 435 (1934). Congress has the power to condition, limit, or deny deductions in arriving at the net income it chooses to tax. *Helvering* v. *Ind. Life Ins. Co.*, 292 U.S. 371 (1934). While the due process clause of the 5th amendment is applicable to Federal tax statutes, *Heiner* v. *Donnan*, 285 U.S. 312 (1932), Congress is given great leeway, and a Federal taxing provision is not violative of the due process clause of the 5th amendment unless it classifies taxpayers in such a manner as to be arbitrary and capricious. Sections 151 and 152 provide reasonable classifications for dependency exemption deductions. The 14th amendment does not apply to Federal tax statutes.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

IRWIN, *J.*, dissenting: I disagree with the majority as to the quantum of proof Congress intended to require by the phrase "clearly establish" which is used for the first time in the Internal Revenue Code of 1954 in section 152(e) (2) (B) (ii).

The majority holds that a "clear preponderance" of the evidence was intended. I would hold that "clear and convincing" evidence was intended.

In identical language the House and Senate committee reports, in referring to section 152(e) (2) (B) (ii), state:

the parent having custody remains entitled to the deduction with respect to a particular child, if he establishes that he, in fact, furnished a greater portion of

that child's support than did the parent not having custody, but only if he establishes this fact *by clear and convincing evidence.* [Emphasis supplied.]

The majority, although noting this language and despite the fact that petitioner urged this standard of proof, succumbs to temptation and substitutes its judgment for what it thinks Congress meant rather than accepting what Congress clearly and unequivocally stated it meant.

In the words of the Supreme Court, "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." *United States* v. *Amer. Trucking Ass'ns.*, 310 U.S. 534, 542 (1940). See also *Commissioner* v. *Bilder*, 369 U.S. 499 (1962) ; *Board* v. *Hearst Publications*, 322 U.S. 111 (1944) ; *Harrison* v. *Northern Trust Co.*, 317 U.S. 476 (1943).

In this case the majority completely oversteps the bounds of this function. Its excuse is that to accept the meaning Congress gives to the words "clearly establish" would result in a construction which would be impracticable and at variance with the general policy of the statute as a whole. It also expresses concern that the parent with custody would have a very difficult burden. After all is said and done, the majority concludes that "It seems highly unlikely that Congress could have intended to impose upon respondent (and indirectly upon the parent having custody) a stringent and extraordinary burden." It apparently does not quarrel over whether or not "clearly establish" is subject to more than one interpretation, although it does hold that the common import of the words "clearly establish" requires only a clear preponderance of the evidence.

While it is tempting to let equitable considerations guide us in construing statutory language the Supreme Court has stated:

the equitable considerations which the * * * [taxpayer] brings to bear in support of her construction * * * are of course beside the point in this Court, since we must give the statute effect in accordance with the purpose so clearly manifested by Congress. [*Commissioner* v. *Bilder, supra* at 504 fn. 5.]

I agree with the majority that Congress, in enacting section 152(e), was hoping to facilitate the settlement of cases such as this one at the administrative level. Congress fully understood the fact that the parent with custody of the children was in a far better position to furnish information as to the total support of the children. With this in mind, in my opinion, Congress deliberately and consciously imposed a heavy burden of proof on such parent.

This is a case of first impression under section 152(e)(2)(B) and without any experience as to the operation of the burden of proof requirements as set forth by Congress the majority would have us

16

violate the clear mandate of Congress. Since Congress has imposed the standard of proof requiring a clear preponderance of the evidence in sections 357(b)(2) and 1551(a), we can infer that it was well aware of this standard when it wrote section 152(e)(2)(B) and yet it defined the burden required therein in the committee reports as clear and convincing evidence.

It has been held that "clear and convincing" evidence is—

that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*. [Emphasis supplied. *Hobson* v. *Eaton*, 399 F. 2d 781, 784 fn. 2, (C.A. 6, 1968), certiorari denied 394 U.S. 928 (1969), quoting *Cross* v. *Ledford*, 161 Ohio St. 469, 120 N.E. 2d 118 (1954).]

It would appear in light of the circumstances usually involved in cases requiring a determination of which divorced parent is entitled to dependency exemptions that the burden of proof Congress intended to require could well turn out to be practical and in consonance with the general policy of the statute as a whole.

In any event, if experience indicates that the requirement of "clear and convincing" evidence, which Congress states is meant by "clearly establish," leads to harsh and unreasonable results, it is the prerogative and function of Congress, not of this Court, to redefine it.

FORRESTER, SCOTT, FAY, STERRETT, and QUEALY, *JJ.*, agree with this dissent.