Richard Keith Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 1267-71.
United States Tax Court
T.C. Memo 1972-192; 1972 Tax Ct. Memo LEXIS 64; 31 T.C.M. (CCH) 941; T.C.M. (RIA) 72192; September 5, 1972
Richard Keith Johnson, pro se, P.O. Box 2834, West Allis, Wis.Robert F. Brunn, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $846.72 in petitioner's Federal income tax for the year 1968. At the trial the respondent conceded that the petitioner is entitled to a deduction for State and local income taxes in the amount of $280.60. On brief the petitioner concedes that the correct deduction for Wisconsin general sales taxes is $32. The issues remaining *65 for decision are: (1) Whether the petitioner is entitled to a deduction for interest paid to the First Credit Corporation for the year 1968; (2) whether the petitioner is entitled to deduct certain office-in-home expenses; (3) whether the petitioner is entitled to dependency exemption deductions for his two sons; and (4) whether the petitioner is entitled to deduct as business bad debts or losses certain loan principal repayments to two creditors. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner Richard Keith Johnson was a legal resident of West Allis, Wisconsin, at the time he filed his petition in this proceeding. His individual Federal income tax return for 1968 was filed with the Midwest Service Center, Kansas City, Missouri. Interest Expense On his income tax return for 1968 the petitioner claimed a deduction of $211.20 for interest paid to First Credit Corporation. This represented a total of the interest he paid in 1967 and 1968. Petitioner is a cash basis taxpayer. The amount of interest paid to First Credit Corporation in 1968 was $97.13. Apartment Office Expenses From March 1968 through April 30, 1969, the petitioner *66 lived in a one room efficiency 942 apartment. It was 14 feet by 20 feet, and included a kitchen, closet, bathroom and hallway. He rented it for $89 a month furnished, including a storage locker. The landlord paid the electricity, water, heat and other utilities. On April 17, 1968, the petitioner was employed as an outside salesman by the Stanley Air Tools Division of the Stanley Tool Works. Petitioner's employer provided him with desk space and a telephone answering service during the day. He was also furnished a company car and was reimbursed for the expenses of operating it. He used the company car to carry the tools he was employed to sell. In addition to using his apartment for personal living, the petitioner often conducted his business from the apartment. He had a desk and filing cabinet there in which he maintained his business records. He also had stored in the apartment substantial company inventory - air tools - having a value of over $14,000. To safeguard the equipment the petitioner put a security lock on the apartment door at a cost of $18.75. Petitioner, who was usually out seeing customers during the day, frequently used his apartment telephone for business *67 purposes during the early morning hours and at night. In 1968 petitioner claimed $27.08 of his telephone costs as a business expense. Petitioner rented a post offce box in 1968 at a cost of $13.50. He received both personal and business mail at the post office box. All of the cost was claimed as a business expense. Petitioner deducted office-in-home expenses of $427.58, including the telephone, on his 1968 income tax return. This amount was disallowed by respondent as not constituting ordinary and necessary business expenses. Dependency Exemptions Petitioner and his wife, Vivian, were separated during the year 1968. Their two sons, Brian and Larry, who were 12 and 10 years of age in 1968, were in the custody of their mother and resided with her during that year. In 1968 the petitioner paid Vivian Johnson the sum of $1,985 for the support of her and the two children. Of this total amount $661.66 was spent for the support of each child. Petitioner also provided additional support of $143.26 for Brian and $158.88 for Larry consisting of gifts and various miscellaneous items. At the time of their separation or shortly thereafter, the petitioner gave his wife his share of their *68 furniture and a used automobile which they had owned jointly. The furniture was worth $2,000 and the car $700, one-half or $1,000 and $350, respectively, being contributed by each of them. A total of $666 for the furniture and $200 for the automobile (transportation) are support items for each child. Petitioner and Vivian each furnished one-half of these items. Both the petitioner and Vivian claimed the dependency exemptions for their two sons on their separate Federal income tax returns for 1968. Respondent disallowed the dependency exemption deductions claimed by the petitioner on the ground that he did not provide more than one-half of the total support of the two children in 1968. The total amount of support for Brian in 1968 was approximately $2,930.50. The petitioner provided $1,237.92 and Vivian provided $1,692.58. The total amount of support for Larry in 1968 was approximately $2,946.12. The petitioner provided $1,253.54 and Vivian provided $1,692.58. Repayment on Loans On June 30, 1966, the petitioner borrowed $1,000 from a friend, Ben Schaefer. He signed a 90-day note with interest at 7 1/2 percent. Ben Schaefer's records do not show the purpose for which the petitioner *69 borrowed the money. This $1,000 was deposited by petitioner on June 30, 1966, to the bank account of the Industrial Tool and Machine Corporation, a company in which the petitioner owned 700 shares of stock. The petitioner was its president and principal operating officer. The $1,000 borrowed from Ben Schaefer was used by the corporation to meet its payroll, to pay creditors and to buy materials needed to finish certain work in progress. On his 1968 income tax return the petitioner claimed under "miscellaneous deductions" the amount of $650 paid to Ben Schaefer. This was the total of repayments of principal made by petitioner in 1967 and 1968. The amount of principal repayments to Ben Schaefer in 1968 was $350. On September 2, 1966, the petitioner borrowed $1,021.07 from the First Credit Corporation. The collateral given was the 943 household furniture then owned by petitioner and Vivian. The petitioner stated that he wanted the loan for "business expenses" or for "business purposes." The amount was disbursed to the petitioner personally and not to any corporation or to any noncorporate business. Petitioner was free to spend the amount as he desired. The First Credit Corporation *70 did not require, as a condition of making the loan to petitioner, that he spend the funds disbursed on any "business expense" or "business purpose." First Credit Corporation did not care how the money was spent by the petitioner. On September 2, 1966, the $1,021.07 was deposited by petitioner to the bank account of the Industrial Tool and Machine Corporation. It was used by the company to meet its payroll, to pay creditors and to buy materials needed to complete work in progress. On his 1968 income tax return the petitioner claimed under "miscellaneous deductions" the amount of $886.80 paid to First Credit Corporation. This was the total of the repayments of principal paid by petitioner in 1967 and 1968. The amount of the principal repayments to First Credit Corporation in 1968 was $539. Sometime in late 1966 or early 1967 the Industrial Tool and Machine Corporation was put into receivership in the Circuit Court, Milwaukee County, Wisconsin. Paul L. Moskowitz was appointed Receiver. The accounts receivable totaled $31,000 and the corporation had a $26,000 inventory of tools. In the State receivership proceeding the petitioner filed a claim for $8,333.92 as a general creditor. *71 He was paid $2,500.18 by the receiver, based upon 30 percent paid to all general creditors having bona fide claims. The loans the petitioner received from Ben Schaefer and First Credit Corporation in 1966 were included in the $8,333.92 claim. In addition to the claim for $8,333.92 filed in the receivership proceeding, the petitioner reported his 700 shares of stock to be valued at $7,000. On his 1968 income tax return he reported a loss of $3,309.63 on the stock and deducted $1,000 as a shortterm capital loss. This deduction was not questioned by respondent. The loans petitioner obtained from Ben Schaefer and First Credit Corporation were not obtained to enhance or protect his status as an employee and officer of Industrial Tool and Machine Corporation. Nor was petitioner in the business of lending money. Petitioner did not use the loans he obtained from Ben Schaefer and First Credit Corporation for stockholder investment interest in the corporation. Opinion 1. Interest expense. Petitioner, a cash basis taxpayer, is entitled to deduct in 1968 only the amount of interest actually paid by him during that year. The parties have stipulated that the amount of interest he paid *72 in 1968 to First Credit Corporation was $97.13. The remainder of the $211.20 interest deduction claimed by petitioner was paid in 1967, a year not involved in this proceeding and over which we have no jurisdiction. Consequently, we hold that the correct interest deduction for 1968 was $97.13. 2. Apartment office expenses. Based upon this record, we think the petitioner's expenses incurred in maintaining part of his apartment as an office and a storage place for the products (air tools) he sold are ordinary and necessary business expenses. An employee may deduct the expenses of an office in his home even though he is not "required" to maintain one as a condition of his employment. See and compare Newi v. Commissioner, 432 F. 2d 998 (C.A. 2, 1970), affirming a Memorandum Opinion of this Court. To meet the ordinary and necessary requirements of section 162(a), Internal Revenue Code of 1954, it is sufficient that the expenses be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933); Commissioner v. Tellien, 383 U.S. 687, 689 (1966). We see no reason for imposing a stricter standard *73 upon a taxpayer whose trade or business is that of an employee. [1]
The evidence here shows that it was necessary for the petitioner to do work in his apartment, where he kept his records, stored his product samples, and contacted customers by telephone. The amount ($400.50) he claimed is reasonable and we think 944 deductibele. In addition, we hold that he is entitled to deduct $16.60 as a business expense for the telephone; $18.75 as a business expense for the security lock to protect the stored air tools; and $6.75 for the business use of a post office box. 3. Dependency exemptions. This is a factual question. We must decide whether the petitioner provided over half of the support for his two minor sons in 1968. On the evidence presented we have concluded, and found as a fact, that the petitioner did not provide more than half of the total support of his sons in that year. Although the petitioner, who did not have custody of the children, provided more than $1,200 for their support (see section 152(e)(2)(B)(i) of the Code), the evidence adduced through *74 the testimony and records of the children's mother, Vivian Johnson, who had their custody, clearly established that under section 152(e)(2)(B)(ii) she provided more for the support of the children in 1968 than the petitioner. Allen F. Labay, 55 T.C. 6 (1970), affirmed 450 F. 2d 280 (C.A. 5, 1972). The facts simply do not support the petitioner's inflated claim that he provided $4,916.61 for the support of his sons in 1968. First, we point out that only twothirds of the $1,985 paid to Vivian is attributable to the sons' support. Second, the furniture and the car, both of which were jointly owned, should be treated as equally provided by the petitioner and Vivian. Cf. Eva Lindberg, 46 T.C. 243 (1966); Gilliam v. Commissioner, 429 F. 2d 570 (C.A. 4, 1970), affirming per curiam a Memorandum Opinion of this Court. Third, with respect to the lodging support for the children, it is our view of the evidence that Vivian Johnson either owned the house hereself in 1968 or she was granted exclusive use of the house by the petitioner. We know that she made all the mortgage payments (about $160 per month) and deducted the mortgage interest on *75 her 1968 income tax return. But, contrary to petitioner's belief, the measure of the lodging support is not the amount of the mortgage payments; it is the fair market value of the lodging provided. Such value for 1968 has been established at $250 per month by the opinion of a real estate broker. Twothirds of the $250 is attributable to the children. In the absence of any other evidence in this record showing the ownership of the house in 1968, we think Vivian Johnson must be deemed to have provided the entire lodging support for the children in that year. See Wood v. United States, 287 F. Supp. 90 (D.C. Ore. 1968). Accordingly, we sustain respondent's determination on this issue. 4. Repayments on loans. Petitioner claimed as "miscellaneous deductions" - presumably as business bad debts or losses - the amounts of repayments (totaling $1,536.80) of principal on the money he borrowed from Ben Schaefer and First Credit Corporation in 1967 and 1968. Whether a debt owed by a corporation to a shareholder-employee constitutes a business or nonbusiness bad debt depends upon the dominant motivation of the shareholder-employee. United States v. Generes, 405 U.S. 93 (1972). *76 It is clear that the petitioner was not in the business of lending money. Hence the critical consideration is whether the loans or advances were made to enhance or protect his equity interest in Industrial Tool and Machine Corporation or to protect his employee status. The mere fact that he was the principal operating officer of the company does not mean that the loans or advances were made to protect his employee status. Except for a small salary, there is no evidence showing any employee interest the petitioner was trying to protect. In fact, all of the petitioner's testimony relates to his investment in the corporation, his desire to keep it "alive," and the labor and services performed by others. Although a stockholder-employee might furnish vital organizational, promotional and managerial services to his corporation, this by itself does not show a trade or business. A profit motive is distinctive to the process of investing, and investment is not a trade or business. Whipple v. Commissioner, 373 U.S. 193 (1963); Putnam v. Commissioner, 352 U.S. 82 (1956). Our conclusion, based on the evidence in this record, is that the petitioner's dominant motive *77 in making the loans or advances to the corporation was to protect his investment therein and, consequently, the loans were at best nonbusiness bad debts. As such, they are subject to the limitations of section 166(d) of the Code. The petitioner has previously deducted the maximum amount allowable ($1,000) under section 166(d). Therefore, he is not 945 entitled to any further deduction in 1968. And the petitioner did not choose to treat the advances made to the corporation as increasing his equity interest. To reflect the concessions made by the parties and our conclusions on the disputed issues, Decision will be entered under Rule 50. Footnotes
1. See Stanley E. Bailey, T.C. Memo. 1971-107; Marvin L. Dietrich, T.C. Memo. 1971-159↩.