AHMED F. HABEEB AND MAGDA E. HABEEB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Habeeb v. Commissioner
Docket No. 5731-75.
United States Tax Court
T.C. Memo 1976-259; 1976 Tax Ct. Memo LEXIS 141; 35 T.C.M. (CCH) 1134; T.C.M. (RIA) 760259; August 19, 1976, Filed Ahmed F. Habeeb, pro se. Thomas R. Thomas, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Pursuant to the provisions of section 7456(c) of the Internal Revenue Code and Rules 180 *143 through 182, Tax Court Rules of Practice and Procedure, this case was assigned to Special Trial Judge Lehman C. Aarons for the purpose of conducting the trial and preparing a report containing findings of fact and an opinion. His report was filed on May 13, 1976, and both parties have filed various exceptions thereto.We have reviewed the record in this case and reject the exceptions filed by the parties. Consequently, we agree with and adopt the opinion of Special Trial Judge Aarons as set forth below. OPINION OF THE SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: This case was scheduled for trial as a small tax case under section 7463 of the Code. [1] When the case was called for trial at Birmingham, Alabama, on February 9, 1976, petitioner Ahmed F. Habeeb (hereinbelow sometimes referred to as "the petitioner") stated that he wished to preserve his right to appeal as to the dependency issue, which is one of several issues discussed below. The Court declined to sever the issues for this purpose, but ordered that the letter "S" be deleted from the docket number and that the entire case be tried as a regular Tax Court case. *144 The deficiency in federal income tax which was determined by respondent herein was for the year 1973 in the amount of $577.04. The statutory notice of deficiency contained a number of adjustments. Although the petition contested only the business expense disallowance set forth in the statutory notice, respondent agreed at the trial that petitioner could contest all the adjustments. The issues before the Court, therefore, are 1) the amount, if any, which petitioners are entitled to deduct as political contributions under section 218 of the Code; 2) the propriety of a dependency deduction for petitioner's mother claimed under sections 151 and 152 of the Code; and 3) the propriety of various business expenses claimed as deductions under section 162 of the Code. FINDINGS OF FACT Petitioner and his wife Magda E. Habeeb filed their joint federal income tax return for 1973 with the Internal Revenue Service Center at Chamblee, Georgia. At the time the petition in this case was filed, their residence was, and continues to be, Birmingham, Alabama. 1) Political Contributions. Petitioner testified that "about four times" he made cash contributions to or for the benefit of persons *145 running for city or county office, each in the amount of $20 to $30. He kept no records, received no receipts, did not recall the dates or the names of the office-seekers, and admitted that the amount sought to be deducted was an estimate. 2) Dependency Exemption. Petitioner's mother, whom petitioner claimed as a dependent on his 1973 return was during that year a resident of Cairo, Egypt. She was not a citizen of the United States during the year 1973. The testimony as to the total amount of the mother's support and the portion thereof contributed by petitioner was vague. It appears, however, that the mother received support only from petitioner and from his brother in Egypt, and that petitioner contributed over one-half of the total support. 3) Business Expenses. a) Capital Items. During the year 1973, petitioner was an Associate Professor at the medical school at the University of Alabama in Birmingham (UAB). His fields of specialty were microbiology and immunology. He was the author or co-author of a substantial number of treatises in these fields and in various sub-specialties of these fields. He used one of the five rooms in his home as an office, *146 and the respondent has not questioned the deductibility, under section 162 of the Code of his claimed "office at home" expenses except for certain items which respondent claims should have been capitalized rather than currently deducted. Specifically, petitioner purchased an air conditioner for $1,200 on February 26, 1973, a furnace for $250 on April 9, 1973, and a tape recorder for $300 in January of 1973. Petitioner in his 1973 return claimed a deduction of $218.60 in connection with the 20 percent business use portion of the air conditioner. This amount was the result of a computation based upon the fact that the purchase price of the air conditioner included $420 for labor and $780 for parts, of which $490 was for the compressor, together with the fact that the guarantee was one year for labor and five years for the compressor. In the case of the air conditioner as well as the other items mentioned below, petitioner equated the guarantee period to useful life.Respondent disallowed this claimed deduction, but allowed $18.12 depreciation on the 20 percent business use portion of the air conditioner, based on an 8-year useful life and upon a purchase price of $1,093 (rather than *147 the $1,200 actual purchase price) and also, based upon an acquisition date of May 1, 1973 (rather than the actual acquisition date of February 26, 1973). With respect to the furnace, petitioner likewise separated the $250 purchase price into labor and parts components and deducted the full allocable portion of the labor cost. His computation resulted in a claimed deduction of $50 on account of the furnace. Respondent's adjustment resulted in an allowance of $4.17, based upon an 8-year useful life and an acquisition date of May 1, 1973. As to the tape recorder, petitioner deducted the full $300 cost on the ground that there the warranty or guarantee was for 90 days.Respondent allowed $150, based upon a 2-year useful life. b) Trip to Egypt. In the summer of 1973, petitioner travelled to Egypt at his own expense. The trip lasted 45 days and travel was by a chartered flight because it was cheaper. During his stay in Egypt petitioner delivered 5 lectures at the University of Alexandria and 2 lectures at the University of Cairo. These lectures involved subjects within petitioner's expertise, such as "Antigenicity of Proteins" and "Chemistry of Antibodies". The lecture dates *148 span the 14-day period from July 4 to July 18. Petitioner testified that he was invited to give these lectures, but also admitted on cross-examination that he had volunteered his services. He received no compensation or expense reimbursement for such lecures. Petitioner testified that he had numerous discussions with students, professors, and other lecturers while in Egypt for the purpose of exchanging ideas, keeping abreast, reviewing articles, and generally to avoid the isolation which one would experience if one did not travel. Petitioner's testimony on this score was general and non-specific. Petitioner's mother lived in Egypt. In addition to seeing her there in 1973, he had visits with her in 1970, 1971, 1972, 1974 and 1975. He also has other relatives living in Egypt. The amount of travel expense petitioner claims and which respondent has disallowed, related to the Egypt trip, is $1,862.56. Petitioner's actual expense for the trip exceeded that amount, but he arrived at that figure by allocating 30 days of the 45-day trip to business pursuits. OPINION 1) Political Contributions. The facts before the Court on this issue are indeed meager. Because of the vagueness *149 of petitioner's testimony on all aspects of his alleged contributions to political campaigns, he would (even in the absence of a special statutory burden of proof) have failed to carry the usual burden of proof required of him under Rule 142(a) of this Court's Rules of Practice and Procedure. See also, Welch v. Helvering, 290 U.S. 111 (1933). But in this case, the statute itself requires verification. See section 218(b)(2) of the Code, and Treasury Information Release 1145, dated February 23, 1972, published as Announcement 72-56, I.R.B. 1972-19, 35. The complete absence of verification here requires that respondent be sustained on this issue. 2) Dependency Exemption. Petitioner's mother was a resident of Egypt during 1973 and was not a United States citizen or national. Section 152(b)(3) of the Code excludes from the term "dependent" (with exceptions not here applicable) any individual who is not a citizen or national of the United States unless such individual is a resident of the United States, of a country contiguous to the United States, of the Canal Zone, or of the Republic of Panama. * * * Petitioner asserts that the quoted provision creates *150 discriminatory and invalid distinctions. This Court has heretofore sustained the validity of section 152 under the 5th Amendment. David B. Barr,51 T.C. 693 (1969); Allen F. Labay,55 T.C. 6, 14 (1970), affd. per curiam 450 F.2d 280 (5th Cir. 1971); and in Wexler v. Commissioner,507 F.2d 843 (1974) the Court of Appeals for the Sixth Circuit affirmed a Memorandum Opinion of this Court (T.C. Memo. 1974-113), specifically upholding the validity of the denial, under the above-quoted language, of dependency deductions for certain non-resident aliens. These decisions are controlling here and respondent is sustained as to the dependency issue. 3) Business Expenses. a) Capital Items. The first group of adjustments made by respondent relate to the air conditioner, the furnace and the tape recorder. Petitioner offered no proof of the useful life of these items other than his reliance upon the duration of the guarantee or warranty periods. With respect to the air conditioner and the furnace, petitioner also seeks to separate the labor and material components and to deduct in the year of purchase the entire business *151 use portion of the labor component. Petitioner is clearly in error as to both his useful life theory and his fragmentation of cost into labor and material components. There is no relationship between the duration of a warranty and useful life for depreciation purposes. To sustain such theory would lead to irrational results, e.g. cases of capital items in which no guarantee or warranty is granted to the purchaser, and cases of automobile purchases in which there is but 1-year warranty. It is equally clear that the cost of services is a capital expenditure when such services are an integral part of acquiring a capital (or a section 1231) asset. See Regs. § 1.263(a)-2; Acer Realty Co. v. Commissioner,132 F.2d 512 (8th Cir. 1942). Petitioner is sustained in his claim that the air conditioner was acquired on February 26, 1973 for $1,200 and that the furnace was acquired on April 9, 1973 for $250--respondent in his brief conceded these facts--and respondent is sustained in all other respects in connection with his adjustments relating to the air conditioner, the furnace and the tape recorder. b) Trip to Egypt. The remaining contested issue relates to *152 petitioner's travel to Egypt. In confronting this issue attention must be directed to the requirements of section 162 of the Code as well as the requirements of section 274 which are superimposed thereon. There is no problem of substantiation as to this issue. Respondent has agreed that petitioner actually spent $1,862.56 which he claimed as a deduction for his travel to Egypt in the summer of 1973. Indeed, it appears from the record herein that petitioner spent more than that amount. He was on the Egypt trip for a period of 45 days; he deducted only that portion of the expenses attributable to 30 days as business expense. For a 14-day period (July 4 to July 18, 1973) petitioner was engaged in lecturing at the Universities of Cairo and Alexandria. Even though petitioner may have solicited the invitations to lecture, there is no question that he did give the lectures; and additionally, it has been established that petitioner is well-respected for his specialized learning, his writings, and his lectures, and that his lectures helped to maintain that reputation. The first question to be answered is whether the trip to Egypt was primarily personal in nature. If so, Regs. *153 § 1.162-2(b) would require disallowance of the travel deduction even though some business activities took place during the trip. Two weeks of the approximately 6-week trip were spent delivering a series of lectures, for which petitioner devoted substantial time and effort in preparation. Even though petitioner might have chosen some other country for some of his lectures had it not been for his mother and father in Egypt, the trip does not, for that reason become "primarily personal." It is true that the presence of close relatives at the place of destination may raise a question of disguised personal motive for a trip or series of trips. Cf. William R. Kinney, 66 T.C. 122 (1976). But if an adequate business justification exists, the fact that trips are repeated to the same destination, where the taxpayer has relatives or friends does not, ipsofacto, obliterate the business character of the trip. As to the overall time spent on the trip, it is to be noted that petitioner took a 45-day charter flight because it was cheaper. Although Regs. § 1.162-2(b) states that the amount of time spent on personal versus business activities is "an important factor" *154 in determining primary purpose, it is believed that under the totality of facts and circumstances here present, the trip was taken primarily for the business purpose of maintaining petitioner's reputation in the field of his specialty. [2]
However, section 274(c) of the Code provides for disallowance of certain travel expense even though such expense would otherwise be allowable as a deduction under section 162. The restrictive rules under section 274(c) apply to foreign travel exceeding one week if the protion of time attributable to nonbusiness pursuits exceeds 25 percent of the total travel time.Section 274(c)(2). Petitioner himself has maintained herein that the business portion of his 45-day Egypt trip was only 30 days. Accordingly the disallowance rules under section 274 must be considered. The application of those rules is set forth in Regs. § 1.274-4(f) as follows: (f) Application of disallowance rules--(1) In general. In the case of expense for travel outside the United States away from home by an individual to which this section applies, except as otherwise provided in subparagraph *155 (4) or (5) of this paragraph, no deduction shall be allowed for that amount of travel expense specified in subparagraph (2) or (3) of this paragraph (whicheven is applicable) which is obtained by multiplying the total of such travel expense by a fraction-- (i) The numerator of which is the number of nonbusiness days during such travel, and (ii) The denominator of which is the total number of business days and nonbusiness days during such travel. For determination of "business days" and "nonbusiness days", see paragraph (d)(2) of this section. (2) Nonbusiness activity at, near, or beyond business destination. If the place at which the individual engages in nonbusiness activity (hereinafter termed "nonbusiness destination") is at, near, or beyond the place to which he travels in the pursuit of a trade or business (hereinafter termed "business destination"), the amount of travel expense referred to in subparagraph (1) of this paragraph shall be the amount of travel expense, otherwise allowable as a deduction under section 162 or section 212, which would have been incurred in traveling from the place where travel outside the United States away from home begins to the business *156 destination, and returning. Thus, if the individual travels from New York to London on business, and then takes a vacation in Paris before returning to New York, the amount of the travel expense subject to allocation is the expense which would have been incurred in traveling from New York to London and returning. [3]
Petitioner's salvation as to his transportation to and from Egypt lies in the provisions of subparagraph (2) above. Even though most of the days outside of the 14-day lecture period are assumed to have been spent in personal pursuits, all of these personal activities were at or near the place of petitioner's business pursuits, i.e. the Universities of Cairo and Alexandria. As herein *157 noted, it appears that petitioner's trip was not "primarily personal" but that visiting his mother was nevertheless "a major consideration." But since the mother lived at or near the Universities, Regs. § 1.274-4(f)(2) permits the deduction of the round trip to Cairo. Petitioner's generalizations that he conducted other substantial business in Egypt are not persuasive--at least he produced insufficient evidence to satisfy the strict requirements of section 274. It is therefore held that the remaining expenditure elements of the trip, which were computed on a daily average basis (i.e. car rental, $450; food, $450; and accommodations $450), must be recomputed on the basis of an allowance of deductibility for the 14-day lecture period and a disallowance of the remainder, as personal expense. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. "The Code" as used herein refers to the Internal Revenue Code of 1954, as amended.↩
2. Cf. Alexander Silverman, 6 B.T.A. 1328↩ (1927).
3. The subparagraph (4) and (5) exceptions referred to in subparagraph (1) of the above-quoted regulations appear to be inapplicable. The only provision therein which might be pertinent is that under subparagraph (5) there will be no disallowance if personal pursuits did not constitute "a major consideration" in taking the trip. Though, as above stated, petitioner's trip is not here held to be "primarily personal" it does appear that visiting his mother was a "major consideration."↩