JAMES M. STEVENSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stevenson v. Commissioner
Docket No. 16942-80.
United States Tax Court
T.C. Memo 1981-395; 1981 Tax Ct. Memo LEXIS 347; 42 T.C.M. (CCH) 546; T.C.M. (RIA) 81395; July 30, 1981. James M. Stevenson, pro se. Martin F. Klotz, for the respondent. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1978 in the amount of $ 300. The only issue for decision is whether petitioner is entitled to *348 a dependency exemption for each of his two children. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, who resided in San Diego, California, at the time of the filing of his petition in this case, filed his Federal income tax return for the calendar year 1978 with the Internal Revenue Service Center, Fresno, California. Prior to April 15, 1964, petitioner was married to Marnia C. Stevenson. On April 15, 1964, the Superior Court of the State of California for the County of San Diego entered an Interlocutory Judgment of Divorce granting Marina C. Stevenson a divorce from petitioner. A final judgment of divorce was entered in 1965. Petitioner and Marina C. Stevenson have two children--Marcia Elena (Marcia) and Lizbeth Beatrice (Lizbeth). Pursuant to the divorce degree, custody of the children was granted to Marina C. Stevenson with petitioner having reasonable visitation rights. Petitioner was required to pay $ 90 a month support for each of these children or a total of $ 180 a month. The divorce decree made no provision as to which parent would be entitled to claim the dependency exemptions for the children. In 1978 Marcia *349 had her seventeenth birthday and Lizbeth had her fifteenth birthday. Petitioner was obligated for payment of the $ 90 per month for each of his children for the entire year 1978. Marina C. Stevenson remarried prior to the year 1978. During the year 1978 she and her second husband, Charles H. Hines, resided in Fullerton, California. Marcia and Lizbeth resided with them in Fullerton and a daughter by the marriage of Marina and Charles H. Hines also lived with them during that year. During 1978 petitioner paid $ 2,700 toward the support of Marcia and Lizbeth. At least $ 2,160 of this amount was paid by checks, the first of which was dated December 31, 1977, and deposited by Mr. and Mrs. Hines in their bank account on January 7, 1978. Some of the support payments made by petitioner in 1978 were with cash. When petitioner made a payment by check, he usually sent the check to Mrs. Hines by mail. During the latter part of 1976 and the early part of 1977, petitioner was without work and had not made the payments required by the divorce decree. In 1977, petitioner received a letter from Mrs. Hines requesting that he pay more than the required $ 90 a month for child support because *350 of the increased cost of supporting children. At this time petitioner's salary had increased. Beginning with the check dated December 31, 1977, petitioner wrote a number of monthly checks for $ 270 rather than the required $ 180. Mr. and Mrs. Hines kept a record of some of the payments which petitioner made by check. However, they showed the check for $ 270 dated December 31, 1977, as a payment made in 1977. They allocated the entire amounts of the payments they kept a record of receiving from petitioner in 1978 to payments of amounts they considered as arrearages in petitioner's payments for 1976 and 1977. During 1978 Marcia and Lizbeth usually spent one weekend a month with petitioner. They would come to visit him on Saturday or sometimes on Friday evening and stay until Sunday. Petitioner gave birthday and Christmas presents to his children. Petitioner, on his Federal income tax return for 1978, claimed a dependency exemption for each of his children. Respondent in his notice of deficiency disallowed both of these claimed dependency exemptions. OPINION Section 151, I.R.C. 1954, [1] as applicable to the year 1978, allows a deduction for a dependency exemption of $ *351 750 for each dependent of the taxpayer as defined in section 152. Section 152(a) includes in the definition of dependents a child of the taxpayer who received over half of his support from the taxpayer for the calendar year in which the taxable year of the taxpayer begins. Section 152(e) provides a special rule with respect to who is entitled to the dependency exemption decusion for a child of divorced parents. [2] Under this section, if a child receives over half of his support during the calendar year from his parents who are divorced under a decree of divorce and is in the custody of one or both of his parents for more than half of the calendar year, he shall be treated as receiving over half of his support during the calendar year from the parent having custody for a greater portion of a calendar year unless he is treated under the special provisions of the subsection as having received over half of his support from the other parent. The special rule provides, insofar as here pertinent, that a child of divorced parents who otherwise meets the criteria of section 152(e) shall be treated as receiving over half of his support during the calendar year from the parent not having *352 custody if "the parent not having custody provides $ 1,200 or more for the support of such child (or if there is more than one such child, $ 1,200 or more for each of such children) for the calendar year" and the parent having custody of the child does not clearly establish that he provided more of the support of the child during the calendar year than the parent not having custody. Under this provision because petitioner was the non-custodial parent, he must show that he provided $ 1,200 or more for the support of each of his children during the calendar year 1978 in order to be entitled to the claimed dependency exemptions. If he is able to make this showing, he is entitled to the deduction since respondent has not established that Mr. and Mrs. Hines provided more for the support of the children than he did during the year 1978. *353 Respondent called both Mr. and Mrs. Hines as witnesses. Mrs. Hines merely testified that her husband was an accountant and kept all of the records. Mr. Hines testified to the amount of mortgage payments he made with respect to the house in which the family lived in the calendar year 1978 in Fullerton, California, and the mortgage payments made on a house in Encinitas, California, in which the family had lived in 1977 but which was not sold until sometime in 1978. He added the total amount of the mortgage payments on both of these houses, utility bills, and tax to arrive at a figure which he divided by five to determine the amount he considered the cost of shelter for each of the girls. Although he personally did not purchase all the groceries, he added up all checks written to the grocery store plus either all or some checks written for cash and considered one-fifth of this amount to be the cost of food for each of the two girls. He took the total medical expenses for the family and again divided by five to get the amount of medical expenses for the girls. Without going further into the system that he used, it is clear from the record that he in no way established the cost of the *354 support of either Marcia or Lizbeth in 1978. The issue here is whether petitioner has established that he paid $ 2,400 or more for the support of the two girls in the year 1978. Although Mr. Hines, in his listing of checks received, considered the check for $ 270 dated December 31, 1977, which was deposited in the account of Mr. and Mrs. Hines on January 7, 1978, as being paid by petitioner in 1977 and allocated the amount thereof to payments for half of November and all of December 1976, the record is reasonably clear that this check was for January 1978 since the record shows that most checks were mailed to Mrs. Hines. The check apparently was not received by Mrs. Hines until 1978. According to Mr. Hines' testimony, it was deposited in their account on January 7, 1978. As pointed out in Seraydar v. Commissioner, 50 T.C. 758, 761 (1968), "The statute requires us to measure the value of the support 'received' from petitioner" during the taxable year. It is clear that the $ 270 was received in 1978 and was for the support of the children in 1978. Therefore, petitioner supplied support of $ 2,160 for the children in 1978 with checks of which Mr. Hines kept a record. *355 In addition, as we found from petitioner's testimony, he made other payments in 1978 making total payments by him in that year in excess of $ 2,400. The problem in whether any portion of the payments made by petitioner should be allocated to admitted arrearages in his payments which occurred in the latter part of 1976 and the early part of 1977. Petitioner testified, and we believe his testimony, that he had made a monthly payment of $ 180 or more each month from the time of the entry of the divorce decree throughout the year 1978 except for the period of time in the latter part of 1976 and the early part of 1977 when he was unemployed. In 1977 and 1978 he made some monthly payments in excess of $ 180. As we pointed out in Casey v. Commissioner, 60 T.C. 68, 73 (1973), arrearages of support paid by a taxpayer in a particular year in excess of his obligation for that year cannot be considered child support payments for the year in which paid. In that case we stated at page 73: In Thomas Lovett, 18 T.C. 477 (1952), the husband-petitioner fell behind in his child support payments for 1946 but paid more than his obligation for 1947. This Court *356 held that the excess of the 1947 payments was not support for the children in custody of his former wife for 1947 but was reimbursement to the former wife for amounts she paid for support of the children in 1946. In Frank P. Gajda, 44 T.C. 783 (1965), this Court held that where the payments made in the current year did not exceed the petitioner's child support obligations for the current year, the amount of the petitioner's contribution for the support of the children would not be reduced by the arrearages included in the payments if the money was actually spent for child support. And in Allen F. Labay, 55 T.C. 6 (1970), affirmed per curiam 450 F.2d 280 (C.A. 5, 1971), this Court reviewed and approved the conclusions reached in both of the above cases, stating: "The rule in Lovett prevents a father from claiming exemptions, to which he might no ordinarily be entitled, by shifting child support from one year to another. On the other hand, the Gajada case provides that he will not lose the exemption merely because he is in arrears. The contrary rule might discourage him from making current payments. Petitioner herein falls *357 under the Lovett rule. His arrearage payments were not child support in 1966 and 1967." See also Treas. Reg. 1.152-1(a)(2)(iii)(a). Petitioner in this case takes the position that he was under no court order to make any arrearage payments and that he intended all payments made in 1978 to be for the year 1978. All of the cases we have found that dealt with arrearage payments involved situations in which the payments as arrearages were made under court order or an agreement of the parties as to arrearage payments. Petitioner and Mrs. Hines had no agreement with respect to payment of arrearages and there was no court order dealing with arrearages. However, in our view, we do not need to decide whether payments intended by a taxpayer for current support should, to the extent they are in excess of the amount required by the court order, be applied to arrearages, if any exist. The reason we find it unnecessary to make a decision in this regard in the instant case is that, in our view, the record reasonably establishes that the support as food and incidental items furnished to the two daughters when they visited petitioner would be in excess of the $ *358 240 difference between the $ 2,160 of payments made in 1978 as required by the divorce decree and $ 2,400. Petitioner did not actually claim that he furnished any support in excess of the payments he made to Mrs. Hines by check and cash. However, both he and his daughter Lizbeth testified that usually both Lizbeth and Marcia spent one weekend a month with petitioner and always at least one weekend every other month. The clear inference from the record is that petitioner furnished the food and entertainment for his daughters when they made these monthly, or sometimes every other month, visits to him. Considering the entire record, we conclude that support during these visits would amount to at least $ 240. Clearly the amounts expended by petitioner in actually providing food and entertainment for his two daughters on their visits to him could not be considered as payments of arrearages. We therefore conclude that petitioner did provide $ 1,200 or more for the support of each Lizbeth and Maricia for the calendar year 1978 and is entitled to the claimed dependency exemption deductions. Decision will be entered for the petitioner. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
2. Sec. 152(e) provides in pertinent part as follows: (e) Support Test in Case of Child of Divorced Parents, Et Cetera.-- (1) General rule.--If-- (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody). (2) Special rule.--The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if-- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and (ii) such parent not having custody provides at least $ 600 for the support of such child during the calendar year, or (B)(i) the parent not having custody provides $ 1,200 or more for the support of such child (or if there is more than one such child, $ 1,200 or more for each of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.↩