PARKER C. FOLSE, JR., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Folse v. Commissioner
Docket Nos. 5879-68, 5889-68, 2708-70, 2709-70, 2776-70.
United States Tax Court
T.C. Memo 1973-98; 1973 Tax Ct. Memo LEXIS 186; 32 T.C.M. (CCH) 436; T.C.M. (RIA) 73098; April 25, 1973, Filed Williard A. Herbert, for the petitioners in docket Nos. 5879-68, 2708-70, and 2709-70, Parker C. Folse, Jr., and Lois T. Folse. Jack W. Hawkins, for the petitioner in docket Nos. 5889-68 and 2776-70, Ann H. Webb (formerly Ann H. Folse). Charles L. McReynolds, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION. SCOTT, Judge: Respondent determined deficiencies in income taxes and additions to taxes of petitioners for the taxable years 1963 through 1967 in the following amounts: 2 Taxable Year Ended
Petitioner Deficiency
Tax
Additions to Tax, Sec. 6651(a)
I.R.C. Sec. 6653(a) 12-31-63
Parker C. Folse, Jr. and Ann H. Folse Webb
$11,209.20
$2,802.30
12-31-64
Docket Nos. 5879-68 and 5889-68
9,118.11
2,279.52
12-31-65
Parker C. Folse, Jr. Docket No. 2708-70
832.73
208.18
$41.64
13-31-66
7,890.90
1,972.73
394.55
12-31-67
384.00
12-31-65
Ann H. Folse Webb Docket No. 2776-70
573.53
143.38
28.68
12-31-66
945.19
236.30
47.26
12-31-66
Lois T. Folse Docket No. 2709-70
1,483.64
370.91
74.18
12-31-67
384.00
*189 Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following: (1) Whether respondent's notice of deficiency for the taxable years 1963 and 1964 mailed on September 20, 1968, was timely. (2) Whether petitioners Parker C. Folse, Jr., and Ann H. Folse (now Ann H. Webb) sustained a deductible theft loss in the taxable year 1963. (3) Whether petitioners Parker C. Folse, Jr., and Ann H. Folse are entitled to deduct certain business expenses claimed on their joint tax return for the taxable year 1963. (4) Whether petitioner Parker C. Folse, Jr., is entitled to dependency exemptions for the two children of his first marriage for the taxable years 1966 and 1967. 3 (5) Whether petitioner Lois T. Folse or petitioner Parker C. Folse, Jr., is entitled to dependency exemptions for the two children of Parker C. Folse, Jr., and Ann H. Folse for the taxable year 1967. (6) Whether the sale of an interest in an apartment project by petitioner Parker C. Folse, Jr., in 1964 was the sale of a capital asset or of property held by petitioner primarily for sale to customers in the ordinary course of his business. *190 (7) Whether petitioners Parker C. Folse, Jr., and Ann H. Folse had reasonable cause for the late filing of their income tax returns for the taxable years 1963 and 1964. (8) Whether petitioner Parker C. Folse, Jr., had reasonable cause for failing to file an income tax return for the taxable year 1966, and whether petitioner Lois T. Folse had reasonable cause for failing to file an income tax return for the taxable year 1966. (9) Whether any part of any underpayment of income tax by petitioner Parker C. Folse, Jr., for the taxable year 1966 was due to negligence or intentional disregard of the rules and regulations and whether any part of any underpayment of income tax by petitioner Lois T. Folse for the taxable year 1966 was due to negligence or the intentional disregard of the rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Parker C. Folse, Jr., resided in Dallas, Texas at the times he filed petitions in these cases. He filed a Federal 4 income tax return for his taxable year 1967 with the district director of internal revenue, Dallas, Texas. Petitioner Ann H. Webb (formerly Ann H. Folse) was *191 married to Parker C. Folse, Jr., during her taxable years 1963, 1964, 1965, and until April 1966. She resided in Dallas, Texas at the times she filed petitions in these cases. She and Parker C. Folse, Jr., filed joint Federal income tax returns for the taxable years 1963 and 1964 with the district director of internal revenue, Dallas, Texas. Petitioner Lois T. Folse is the present wife of Parker C. Folse, Jr. She resided in Dallas, Texas at the time she filed her petition in this case. She filed a Federal income tax return for the taxable year 1967 with the district director of internal revenue, Dallas, Texas. Harlis Jackson (hereinafter referred to as Jackson) is a revenue officer assigned to collections work with the Internal Revenue Service in Dallas, Texas. He was assigned to make a taxpayer delinquency investigation with respect to Parker C. Folse, Jr. (hereinafter referred to as petitioner) in the fall of 1965. After several requests, petitioner agreed to come into the office of the Internal Revenue Service in Dallas, Texas to file Federal income tax returns for 1963 and 1964. Petitioner came into that office sometime in November 1965 and with the help of an audit *192 employee in the office filled out Federal income tax returns for 1963 and 1964 in the name of himself and Ann H. Folse and signed them. Jackson asked petitioner to take the returns with him to 5 have Ann H. Folse sign the returns. Petitioner took the returns with him and was given a green pre-addressed franked envelope which had the name "Jackson" written in the lower left hand corner, for the purpose of returning the signed returns to the district director's office. On January 20, 1966, Jackson received a green, pre-addressed franked envelope with the inscription "Jackson" written in the lower left corner. In the upper left corner of the envelope was the following inscription: Parker Folse Preston Tower Dallas, 75225 The envelope bore the postmark of Dallas, Texas and cancellation date of January 17, 1966. Enclosed in the envelope were the Federal income tax returns for the taxable years 1963 and 1964 which petitioner with the help of an Internal Revenue Service employee had filled out, signed by both petitioner and his wife Ann H. Folse. Jackson took the returns and the green envelope over to a cashier's window and saw each return stamped. Jackson at that time *193 did not read the mark made by the rubber stamp. The returns and the envelope were retained by the cashier. On January 21, 1966, Jackson prepared his daily report of collection activity (form 795) for January 20, 1966. This report shows, among other items, that Jackson disposed of one TDI (taxpayer delinquency investigation) by securing two returns from "Parker C. and A. H. Folse." Also, on January 21, 1966, Jackson prepared a delinquent 6 return information and return compliance record (form 3570) which stated that two form 1040's had been secured on January 20, 1966 from "Parker C. Jr. and Ann H. Folse," that no money was collected, that the balance of tax due was $8,130.30, and that the periods of returns were 1963 and 1964. At a later time, in the course of his employment, a special agent requisitioned the 1963 and 1964 joint Federal income tax returns of petitioner and Ann H. Folse from the official files of the Internal Revenue Service. The returns were shown by this special agent to Jackson who, at that time, noticed that the green envelope bearing the return address of Parker Folse and postmarked January 17, 1966, was attached to the returns, and that the impression *194 left by a rubber stamp on each of the joint returns was as follows: RECEIVED 75 Jan 20 1965 Dist. Dir. Int. Rev. Dallas Type A Teller #1 It is customary procedure in the Dallas office of the Internal Revenue Service for delinquent tax returns to be attached to the envelope in which they are received in the mail. Respondent mailed his statutory notice of deficiency for the taxable years 1963 and 1964 to petitioner and Ann H. Folse on September 20, 1968. In early 1963 petitioner because of a shortage of funds in his bank account, became aware that checks had been drawn on his account by someone else. Shortly thereafter, petitioner received a telephone 7 call from a person identifying himself as Nate Lenett in Las Vegas, Nevada. The caller told petitioner that while he had been in Las Vegas gambling he had left some checks which had been returned and for that reason Lenett was holding a check that he had not deposited. Petitioner told Lenett that he had never been to Las Vegas. Lenett insisted that petitioner had given him the checks and told petitioner that he could make arrangements for someone from Dallas to call on petitioner to insure that the checks were *195 made good. Petitioner knew that his brother William Lee Folse (hereinafter referred to as William) had recently been in Las Vegas and so he contacted William who told petitioner that he had drawn the checks on petitioner's bank accounts. Petitioner sent Lenett the funds to cover the checks Lenett was holding including one that never went through a bank. Petitioner also sent money to the credit manager at the Stardust Hotel in Las Vegas to cover other checks William had drawn on his account. William drew a check dated January 7, 1963, for $100 on petitioner's account in the First National Bank of Dallas which was paid when presented. William drew a check in the amount of $1,000 dated January 6, 1963, on petitioner's account in the Park Cities Bank and Trust Company, Dallas, Texas, which was not paid when presented. This check is drawn to cash and in the right hand corner has the notation "Nate Lenett G. Dir." William drew a check dated January 15, 1963, for $1,000 on petitioner's account in the Bank of Dallas.This check was never presented for payment. In the lower left hand corner of this 8 check is the notation "Nate L." William drew a check dated February 20, 1963, on *196 petitioner's account in Park Cities Bank and Trust Company, Dallas, Texas which was not paid when presented. This check on the back bears the notation "Nate L." Petitioner received a letter dated March 18, 1963, signed "Dale Lenett per Nate Lenett" which read "My husband ask [sic ] me to return the enclosed and is sorry for the inconvenience to you." Under date of January 23, 1963, petitioner received a letter from the credit manager of the Stardust Hotel in Las Vegas, Nevada, which read: Thank you for the money order. I enclose the checks as requested. I'm sorry to hear of the difficulty you're having with your brother. Rest assured, we'll cooperate with you in any way we can. Incidentally, William still owes us $650 on bad checks he wrote in March of 1961. Again, if I can be of any service to you please don't hesitate to call on me. At the time petitioner informed William of his displeasure with his drawing checks on petitioner's various checking accounts, William stated that he intended to repay petitioner for the checks so drawn. Petitioner has made several demands on William for repayment but the latter had not paid any amount toward the debt as of February 1972.Petitioner *197 has threatened to sue to recover the debt but has not done so. Petitioner has taken no legal action to recover from the bank which honored a check with the forged signature of petitioner any loss resulting from the honoring of the check. 9 Petitioner and Ann H. Folse included with their 1963 income tax return which was prepared with the assistance of an Internal Revenue Service employee a "Schedule C" reporting "Profit (or loss) From Business or Profession." Included in the expenses shown on this schedule were the following: Depreciation
$600.00
Legal and professional fees
575.00
Interest on business indebtedness
868.00
Other business expenses
Gasoline
192.00
Repairs
30.00
Office expense
1,080.00
Telephone
240.00
Travel
600.00
Office Supplies
400.00
2,542.00
The Schedule C did not show the nature of petitioner's business but did show an address the same as petitioner's home address. The entries were based on notations petitioner told the Internal Revenue Service employee assisting him in the preparation of his return he had made from cancelled checks and expense vouchers. The records from which petitioner stated the notations *198 were made were never examined by respondent's agents. These records were placed by petitioner in a warehouse along with some furnishings at the time of the pendency of his divorce action. The furnishings were all sold by the warehouse because of nonpayment of storage charges and the records were not returned to him. Petitioner's first wife was Marlee Baker. She and petitioner were married from July 1951 until the Spring of 1957. Two children were born of this marriage, Parker C. and Paul Folse. Petitioner 10 paid $2,000 in each of his taxable years 1966 and 1967 for the support of the two children of his first marriage. The children lived with their mother and her parents during the years 1966 and 1967. Marlee Baker made the following statement in a letter dated June 27, 1968, to a special agent of the Internal Revenue Service with respect to the support of Parker C. and Paul Folse: I myself do not claim the children as my dependents on my tax return. My father, Paul B. Baker, has claimed them as his dependents for the past several years because he has provided the chief support. To my knowledge Parker C. Folse, Jr., has made no gifts of money or clothing to the *199 children since our divorce. The children reside with me and my father and mother at our home in Austin, 2402 Harris Blvd. Petitioner's second wife was petitioner Ann H. Webb. They were married during the years 1963, 1964, 1965, and until April of 1966. There were two children of this marriage, Camille and Byron. Petitioner in 1967 paid the amount of $1,500 for the support of these two children. The children resided with their mother, Ann H. Webb, during 1967 and the payments made by petitioner constituted the major support of these two children in 1967. On January 20, 1964, petitioner, acting as a joint venturer with W. E. Vaughn (hereinafter referred to as Vaughn), purchased a tract of land in Austin, Texas, known generally as Hillside Village. There was an oral agreement of joint venture entered into between petitioner and Vaughn with respect to the construction of an apartment building on the land. 11 As a result of disagreements between petitioner and Vaughn, Vaughn purchased all of petitioner's interest in the Hillside Village joint venture on August 21, 1964, for the amount of $10,000. Hillside Village was to be an apartment complex. Petitioner's responsibilities *200 with respect to this project included, among others, finding the land and obtaining an option to purchase it. Petitioner was reimbursed all of his out-of-pocket expenses so that his basis in the joint venture was zero. Since 1963, petitioner has participated in the development of about 25 or 30 apartment or other commercial building projects. He considers this to be his regular business. During the years 1961 and 1962, petitioner was engaged by Daniel Gevinson to do some architectural design work in exchange for an interest in a highrise apartment building project in Dallas, 21 Turtle Creek Square. Petitioner shared an office with Gevinson and certain records of petitioner were located in this office. Because Gevinson failed to pay petitioner (and a number of other persons working for him) petitioner filed a lawsuit against Gevinson on January 2, 1963, in order to obtain a judgment and secure a lien on the building project. The records which petitioner kept in the office which he shared with Gevinson were never made available to petitioner after January 2, 1963. Petitioners lawsuit against Gevinson came to trial in 1966 and a judgment was entered against Gevinson in *201 the sum of $12,835. 12 During the time Ann H. Webb was married to petitioner, she was only vaguely familiar with petitioner's business affairs. Petitioner handled all of their business matters and prepared and filed all of their tax returns. Petitioner also maintained whatever records were maintained by them relating to Federal income tax matters. In January 1966, petitioner and Ann H. Folse were separated. Petitioner and Ann H. Folse on their income tax return for 1963 claimed a loss of $3,000 denominated, "Embezzlement - Forged Checks." Respondent in his notice of deficiency disallowed this claimed deduction. By amendment to their petition, petitioner and Ann H. Folse alleged that the amount of the claimed loss should have been $3,100 and that the loss was a theft loss. Respondent in his notice of deficiency disallowed the deductions of $600 for depreciation, $575 for legal and professional fees, $868 for interest on business indebtedness and $2,542 for other business expenses claimed by petitioner and Ann H. Folse on their 1963 income tax return. Petitioner and Ann H. Folse on their 1964 income tax return reported the $10,000 paid to petitioner by Vaughn as long-term *202 capital gain. Respondent in his notice of deficiency determined that the $10,000 constituted ordinary income. Respondent in his notice of deficiency to petitioner and Ann H. Folse determined an addition to tax in each of the years 1963 and 1964 for failure to timely file an income tax return. Petitioner and 13 Ann H. (Folse) Webb each contend there was reasonable cause for the late filing of the return. Respondent in his notice of deficiency allowed petitioner only one $600 exemption for the year 1966. Petitioner in his petition alleged that he was entitled to dependency exemptions for his two children, Parker C. and Paul Folse. Petitioner on his 1967 income tax return and Lois T. Folse on her separate 1967 income tax return filed on a community property basis, each claimed in addition to a personal exemption for "self" two dependents with the following explanation: Note regarding dependents. The four dependents showed [sic ] on Page 1, are Minor children of Parker C. Folse, Jr., who contributed more than one-half of the support of these Children. The Children live with their Mother, a previous wife of Parker C. Folse, Jr. Respondent in his separate notices of *203 deficiency allowed one $600 exemption for "self" to each Parker C. and Lois T. Folse. Respondent in his notice of deficiency to petitioner and in his notice of deficiency to Lois T. Folse for the taxable year 1966 determined an addition to tax under section 6653(a) for negligence and intentional disregard of rules and regulations and an addition to tax under section 6651(a) for failure to file an income tax return.Petitioner and Lois T. Folse each contends that no part of any underpayment of tax for 1966 was due to negligence or intentional disregard of rules and regulations and that there was reasonable cause for their failure to file returns for 1966. 14 OPINION The issue of whether respondent's statutory notice of deficiency to petitioner and Ann H. Folse for the years 1963 and 1964 was timely is entirely factual. Although the returns for the years 1963 and 1964 were stamped into the Dallas office of the Internal Revenue Service with a stamp reciting, "January 20, 1965," respondent contends that the evidence shows that these returns were filed with the district director's office in Dallas on January 20, 1966, making the notice of deficiency issued on September 20, 1968, timely. *204 Since the two returns were stamped with "January 20, 1965," both parties recognize that respondent has the burden of proving that the returns were not filed on that date and the date on which they were in fact filed. We have set forth in our findings the facts which are supported by the record. These facts establish that the returns of petitioner and Ann H. Folse for the taxable years 1963 and 1964 were received in the Dallas Office of the Internal Revenue Service on January 20, 1966, in an envelope stamped with a postal stamp of January 17, 1966. We have found the facts primarily from the testimony of revenue officer Jackson based on reports he made at the time the delinquent returns were filed. Petitioner on brief alternatively contends that even if we conclude the stamp on the returns should have read "January 20, 1966," the joint income tax returns for 1963 and 1964 were as a matter of law filed as of the date Parker C. Folse, Jr., alone, executed the returns in the presence of an Internal Revenue service employee. Petitioner states that since the precise date on which he filled out the returns in the 15 Dallas office of the Internal Revenue Service is not shown, *205 respondent has failed to show that the notice of deficiency mailed September 20, 1968, was timely. The courts have uniformly held that a return is filed with the Internal Revenue Service when a return containing enough information to enable the Commissioner to determine or assess the tax has been received by the Service. See Florsheim Bros. Co. v. United States, 280 U.S. 453 (1930). Although certain cases, for instance Martin v. United States, 411 F.2d 1164 (C.A. 8, 1969), have held that a return, signed only by one spouse and filed by him may in fact be a joint income tax return, depending upon the intent of the other spouse, no case has held that a return has been filed, joint or otherwise, when the spouse completing the return and executing it has taken the signed copy with him to have his spouse sign it, leaving the Service with no return. We conclude that petitioner did not file returns for the years 1963 and 1964 on the date he completed and executed the income tax returns for those years since he did not leave the executed returns with an employee of the Internal Revenue Service. However, the evidence shows that petitioner prepared and executed *206 the returns in November 1965. Even if the returns had been filed at the time they were prepared and executed by petitioner, respondent's notice of deficiency mailed on September 20, 1968 would have been timely. Section 6501(a), I.R.C. 1954. [2] 16 Petitioner and Ann H. Folse contend that they suffered a theft loss in the amount of $3,100 in their taxable year 1963 as a result of petitioner's paying checks which were forged by petitioner's brother. Section 165(c) (3) allows a taxpayer to deduct his losses in excess of $100 arising from theft. Section 1.165-8(d), Income Tax Regs., defines the term "theft" to include, but not necessarily be limited to larceny, embezzlement, and robbery. Petitioner presents two theories to support his claimed theft loss deduction. His first theory is based on a loss resulting from the forgery which occurred when William Folse signed petitioner's name on the checks. His second theory is based on a loss by extortion which petitioner contends occurred when he honored the checks returned to the payee in Las Vegas because the payee threatened petitioner with harm if *207 the checks were not made good. While either a loss from forgery or a loss from extortion if established, would constitute a theft loss, the record in this case fails to establish that petitioner suffered a deductible loss from either forgery or extortion. The record shows that the only check drawn by William on petitioner's account which cleared petitioner's bank was the $100 check drawn on January 7, 1963. Even if this $100 constituted a theft loss to petitioner, it is not sufficient alone to entitle petitioner to a deduction. (Section 165(c) (3). 17 The three $1,000 checks which were drawn on petitioner's account by William were not paid by the bank. Two of these checks were returned unpaid and one was not presented for payment. While it is difficult to reconcile petitioner's testimony or the testimony of William with dates on the checks (one of the checks which was returned unpaid was dated January 6, 1963, the check not presented for payment was dated January 15, 1963, and the final unpaid check was dated February 20, 1963), we conclude from the evidence as a whole that petitioner's payment of these checks was not extortion. Apparently, since the checks were returned *208 to petitioner by letter dated March 18, 1963, petitioner paid Lenett the $3,000 in March of 1963. The inference is clear that petitioner paid these checks to save his brother from possible prosecution for forgery. The evidence shows that William promised to repay petitioner and at the time of the trial he stated he still intended to repay the debt. Petitioner's choice between saving his $3,000 with the probable result that his brother would be prosecuted for forgery or paying the $3,000 and hoping to be able to collect the amount from his brother, was not a happy circumstance. However, the facts here fall far short of showing that the payment was made by extortion. Respondent contends that petitioner has failed to substantiate the amount of the claimed expenditures for depreciation, legal expenses, interest on business indebtedness or other business expenses, the purpose of these expenditures, if made, or that expenditures 18 were made. Petitioner stated that he showed the records which substantiate the claimed deductions to a special agent Albritten although at another point he stated that the records were placed in storage at the time of his divorce and were sold by the *209 storage company as a result of nonpayment of storage costs. Since petitioner's conferences with special agent Albritten were subsequent to the time of his divorce, petitioner's memory in one respect or the other is incorrect. There is no reliable evidence in the record to support petitioner's claimed business expense deductions for the year 1963. Petitioner's testimony to the effect that he thought the deductions he had taken were correct is insufficient to establish his entitlement to these claimed deductions. Petitioner Parker C. Folse, Jr., claimed the two children of his first marriage as his dependents for his taxable years 1966 and 1967, and Parker C. Folse's third wife, petitioner Lois T. Folse, claimed the two children of Parker C. Folse's second marriage as her dependents for dependency exemption purposes for her taxable year 1967, explaining that either she or petitioner was entitled to the deduction. None of the four children of Parker Folse's former marriages lived with either Parker Folse or with Lois Folse in the years 1966 and 1967. In the language of section 152(e), Parker Folse was the parent not having custody of his children by his first marriage in 1966 *210 and 1967 and the children of his second marriage in 1967. 19 Petitioner Parker Folse contends that because his first wife, Marlee Baker, did not support her children nor did she claim them as dependents on her income tax returns, petitioner is entitled to claim the children as his dependents for his taxable years 1966 and 1967. As in the case of Allen F. Labay, 55 T.C. 6, 8 (1970), affirmed 450 F.2d 280 (C.A. 5, 1972), the two years in issue, 1966 and 1967, straddle a change in the law regarding the support test for children of divorced parents.
For petitioner's taxable year 1966, section 152(a) [3] governs the determination of petitioner's right to claim the children of his first marriage as his dependents. For petitioner to prevail, he must prove that the support he provided for these children was more than half of the total support received by the children in the year 1966. Petitioner has proved that he provided $2,000 for the support of the children in 1966 but he has failed to prove the total support provided to the children in that year. A stipulated exhibit shows that these children were claimed as dependents by the father of Marlee Baker. *211 The record is devoid of evidence as to the amount of support furnished to the children by Marlee Baker's father. Petitioner has not sustained his burden of proof that the children received in 1966 more than half of their total support from him. Accordingly, petitioner is not entitled to the dependency exemptions for the two children of his first marriage in his taxable year 1966. 20 For petitioner's taxable year 1967, section 152(e) [4] governs the determination of petitioner's right to claim the children of his first marriage as his dependents.The record shows that 21 petitioner, the parent not having custody of the children, provided more than $1,200 in support for the two children *212 of his first marriage in 1967.Petitioner contends that having made this showing, he is entitled by the express provisions of section 152(e) (2) (B) to claim the children of his first marriage as his dependents. *213 Respondent contends that there is a threshhold requirment of section 152(e) (2) (B) which petitioner has failed to meet. Respondent argues that petitioner must prove that the children of his first marriage received more than half their total support for the calendar year 1967 from their parents before a presumption can be established that petitioner, the parent not having custody of the children, provided more than half of the support for the children in the calendar year 1967 because of his support in excess of $1,200. Respondent has formalized this threshhold requirement in section 1.152-4(a), Income Tax Regs., which states in part as follows: Reg 1.152-4 (TD 7099, filed 3-19-71; amended by TD 7145, filed 10-14-71.) Support test in case of child of divorced or separated parents. (a) Applicability. For taxable years beginning after December 31, 1966, the provisions of section 152(e) and this section relate to a determination of which of separated parents (that is, parents who are divorced or legally separated under a decree of divorce or separate maintenance, or separated under a written separation 22 agreement) is to be treated for purposes of section 152(a) *214 and Sec. 1.152-1 of this chapter as having provided more than half of the support of a child, as defined in section 151(e) (3) and Sec. 1.151-3(a) of this chapter. For section 152(e) and this section to apply either parent or both parents combined must provide more than one-half of the child's total support, within the meaning of Section 1.152-1(a) (2) (i) of this chapter during the calendar year in which the taxable year of the parent who is claiming the child as a dependent begins; and such child must be in the custody of one or both of his parents for more than one-half of the calendar year. Thus, section 152(e) and this section do not apply if a person other than the parents provides one-half or more for the support of such child during the calendar year or has custody of the child for one-half or more of the calendar year. * * * In our view, this requirement which is spelled out in the regulations is imposed by the Code section. The "Special Rule" found in section 152(e) (2) refers to "The child of parents described in paragraph (1) * * *" We conclude that "the parents described in paragraph (1)" are not merely divorced or legally separated parents but are divorced or legally *215 separated parents, whose child receives more than half of his support from them. Accordingly, petitioner must prove that the support which he and Marlee Baker provided to their two children in the calendar year 1967 was over half of the total support the children received in that year. Petitioner stated at the trial that he had taken no steps to determine the total support received by the children of his first marriage in the calendar year 1967 even though he was aware that Marlee Baker had stated that she 23 believed her father provided the greater amount of support for her children. Accordingly, we find that petitioner has failed to establish that he is entitled to dependency exemptions for the children of his first marriage in his taxable year 1967. Petitioner Lois T. Folse claimed the two children of Parker Folse and Ann H. Webb (formerly Ann H. Folse) as her dependents for her taxable year 1967. On her return she stated that the support for these children in that year was provided by Parker Folse, and petitioner made the same statement on his 1967 return. The evidence shows that petitioner Parker Folse, Jr., provided more than $1,200 support for the two children *216 of his second marriage in 1967 and that more than half of the total support received by the children of his second marriage in the calendar year 1967 was received from him. Accordingly, we find that section 152(e) (2) (B) is applicable in this case since petitioner has met the threshhold requirement of proving that he and Ann H. Webb, provided more than half of the support received by their children in the calendar year 1967 and has shown that he provided more than $1,200 for support of the children in that year. Inasmuch as the respondent presented no evidence to show that Ann H. Webb, the parent having custody, provided more support to her children than did Parker Folse, Jr., the parent not having custody, each of the two children are to be treated for purposes of section 152(a) as receiving over one-half of his support during the calendar year 1967 from Parker Folse, Jr., and Parker Folse, Jr., is entitled to claim the two children of his second marriage as dependents. 24 While Parker Folse, Jr., did not specifically list the two children of his second marriage as his dependents on his 1967 return, his wife, Lois, listed them, and on each return it was made clear that petitioner *217 and Lois were each claiming one-half of the dependents of the community under the community property law concept. While respondent makes no reference to the fact in his brief, he has long had outstanding a ruling that in community property States, dependency exemptions may be allocated between spouses so long as each spouse contributed equally to the support of the dependent or the dependent was supported with community funds. I.T. 1275, I-1 C.B. 201. The returns for 1967 of petitioner and Lois clearly list all of their income and deductions on a community basis, one half to each, and make reference to the returns being on a community basis. The preponderance of the evidence is to the effect that the $1,500 paid by petitioner in 1967 for support of the children of petitioner's second marriage was from community funds of petitioner and his wife Lois. Accordingly for the calendar year 1967, we find that petitioner Parker Folse is entitled to dependency exemptions for the two children of his second marriage. We do not pass on the validity of respondent's long-standing ruling since the petition of Parker Folse may properly be construed to place in issue his claim to dependency *218 exemptions for the two children of his 25 second marriage, and the petition of Lois specifically alleges that either she or Parker Folse is entitled to a dependency execmption for the taxable year 1967 for the two children of petitioner's second marriage. Petitioner reported a long-term capital gain under section 1202 in his taxable year 1964 in connection with his sale of his interest in the Hillside Village project to W. E. Vaughn. Petitioner claimed no basis for his interest and reported the entire amount of $10,000 received from Vaughn as gain. Respondent contends that the entire gain of $10,000 constitutes ordinary income to petitioner rather than long-term capital gain. It is petitioner's position that he was a joint-venture participant with W. E. Vaughn in the Hillside Village project. Petitioner obtained the land and performed some other functions and he was totally reimbursed for all expenses he incurred in connection with the project. Because of a misunderstanding between petitioner and Vaughn, petitioner released his entire claim to any interest in the Hillside Village project for the amount of $10,000. This release occurred more than 6 months after petitioner *219 had entered into the venture. Respondent contends that the interest which petitioner sold to Vaughn was property held primarily for sale to customers in the ordinary course of business because of the fact that petitioner had been involved in approximately 25 or 30 projects similar to the Hillside Village project since 1963 and considered 26 his work on such projects as his regular business. In the alternative respondent contends that the $10,000 received by petitioner constituted payment for services rendered and that the existence of a joint venture is not supported by the record. In our view, the record supports petitioner's contention that he was a member of a joint venture with Vaughn. Furthermore, we find that petitioner in fact sold his interest in that venture for the amount of $10,000. We do not find that the $10,000 constituted compensation for services performed. It represented a bargained for price of a capital asset, petitioner's interest in a joint venture. Section 761 provides that for income tax purposes the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, *220 financial operation, or venture is carried on, and which is not, within the meaning of Title 26, U.S. Code, a corporation or a trust or estate. Section 741 provides that In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value). Respondent contends that even if petitioner and Vaughn were members of a joint venture, the holding in Malat v. Riddell, 383 U.S. 569 (1966), requires us to find that the proceeds received by petitioner from Vaughn were ordinary income. 27 In Malat v. Riddell, the taxpayer was a participant in a joint venture which acquired undeveloped land. He claimed the land was acquired for the purpose of building thereon an apartment project. The Government contended there was a "dual purpose" of developing the land or selling it. Difficulties arose in obtaining financing for the project and part of the land was sold by the joint *221 venture and the gain on the sale reported as ordinary income. Thereafter, difficulties arose in securing zoning changes so the participants in the joint venture sold their interest in the remaining property and reported the gain on the sale as capital gain. The Supreme Court, in remanding the case to the trial court, held that the word "primarily" as used in section 1221 was to be given its ordinary meaning, that is "of first importance." Petitioner in this case did not hold his interest in his joint venture with Vaughn primarily for sale to customers in the ordinary course of business, and the joint venture did not so hold the property. The joint venture here sold nothing, nor did it intend to sell the land. It was the intention of both petitioner and Vaughn to develop the property into apartments, not to sell the land. Because of a disagreement between the two participants in the joint venture, petitioner chose to sever his connections with the venture. Petitioner and Vaughn did not sell the land but rather petitioner sold to Vaughn his partnership interest in the Hillside Village joint venture within the 28 meaning of section 741. The money was not in payment for unrealized *222 receivables, that is, rights to payment for services rendered, section 751(c), or for substantially appreciated inventory items. We find that the interest which was transferred was a capital asset and that petitioner was entitled to treat his gain on the sale as long-term capital gain. There is no factual similarity between the instant case and the case of Malat v. Riddell, supra.
Respondent determined that petitioners Parker C. Folse, Jr., and Ann H. Webb (formerly Ann H. Folse) are subject to an addition to tax under section 6651(a) for their failure to timely file income tax returns for their taxable years 1963 and 1964. Petitioner contends that the addition to tax should not be imposed because his delinquency in filing was due to reasonable cause in that it was due to his inability to obtain necessary business records which had been seized by Gevinson some time in 1962. Petitioner Ann H. Webb (formerly Ann H. Folse) contends that the addition to tax should not be imposed on her because she relied on her then husband, petitioner Parker C. Folse, Jr., to take care of all matters concerning income taxes. Respondent contends that the business records which Gevinson *223 took from petitioner could not have been related to petitioner's taxable years 1963 or 1964 but were related to 29 earlier years. Petitioner, as a cash-basis taxpayer, should have had in his possession at all pertinent times, all the records required to enable him and his wife to file timely returns. Petitioner's suit against Gevinson was begun on January 2, 1963, and petitioner has failed to show how the records pertaining to 1962 were necessary to enable him to determine his gross income and expenses for the years 1963 and 1964. We find that petitioner Parker C. Folse, Jr., has not established that his failure to timely file income tax returns for his taxable years 1963 and 1964 was due to reasonable cause. Accordingly we sustain respondent's addition to tax under section 6651(a) as to petitioner Parker C. Folse, Jr., for his taxable years 1963 and 1964. Respondent contends that the evidence is insufficient to show that petitioner Ann H. Webb (formerly Ann H. Folse) relied upon her husband Parker C. Folse, Jr., to such a degree as to justify her failure to file timely returns for 1963 and 1964. Petitioner Ann H. Webb (formerly Ann H. Folse) contends that it was clearly *224 established at the trial that Parker C. Folse, Jr., considered that he was responsible for the income tax matters of Ann H. Folse and himself. The crucial question though is whether Ann, herself, reasonably assumed that Parker filed timely returns for the taxable years 1963 and 1964. Ann "* * * was under a duty to make either individual or joint 30 income tax returns, * * * and to pay a tax on her community one-half of the taxable income shown on these returns." Anne Goyne Mitchell, 51 T.C. 641, 648 (1969), reversed on other grounds 430 F.2d 1 (C.A. 5, 1970), which in turn was reversed on other grounds 403 U.S. 190 (1971)
In our view the record does not show that petitioner Ann H. Webb (formerly Ann H. Folse) exercised the required degree of care with respect to filing her 1963 and 1964 income tax returns. This record does not even establish that Ann H. Folse assumed her husband had filed returns for 1963 and 1964.Even if it did, here, as in Anne Goyne Mitchell, supra, Ann H. Folse "demonstrated a lack of due care in assuming that her husband prepared and signed her name to these * * * returns." We find that petitioner *225 Ann H. Webb (formerly Ann H. Folse) failed to file her income tax returns for 1963 and 1964 on the prescribed dates and has not shown that such failure is due to reasonable cause. Accordingly, the addition to tax for failure to timely file as determined by respondent for her taxable years 1963 and 1964 is sustained. Respondent determined that petitioner Parker C. Folse, Jr., and petitioner Lois T. Folse were each subject to additions to tax for failure to file income tax returns for the taxable year 1966 and for negligently failing to pay the tax each owed for the taxable year 1966. No return was filed by either Parker or Lois Folse for the taxable year 1966. No evidence was presented 31 by either party to explain why a return was not filed. The petitioners had the burden to show that their failure to file was due to reasonable cause and that their underpayment was due neither to negligence nor intentional disregard of rules and regulations. Marcello v. Commissioner, 380 F.2d 499 (C.A. 5, 1967), affirming a Memorandum Opinion of this Court. Again, the contention is presented that petitioner Lois Folse is not subject to the additions to tax for the taxable year *226 1966 because, according to the testimony of Parker Folse, she was completely unaware of the tax obligations for that year. For the same reasons that we found Ann Folse subject to additions to tax for 1963 and 1964, we find Lois Folse subject to additions to tax for 1966. Lois had a responsibility to file either an individual return or together with Parker to file a joint return for her taxable year 1966. She has presented no reason which would excuse her from that obligation. Respondent correctly asserted additions to tax for both petitioner Parker C. Folse, Jr., and petitioner Lois T. Folse for their taxable year 1966 for both failure to file an income tax return under section 6651(a) and because part of the underpayment was due to negligence under section 6653(a). Both petitioners and respondent present argument on whether $6,000 of an amount received by petitioner in 1966 from Dallas Paint and Dry Wall Company was a loan or payment to petitioner for services. This must be argued by inadvertence since the parties disposed of this issue in their stipulated settlement of 32 certain issues. The $12,500 received by petitioner from Dallas Paint and Dry Wall Company was part *227 of the addition by respondent to income of petitioner and Ann H. Webb (formerly Ann H. Folse) and petitioner and Lois T. Folse on a community property basis. After including the amount of $12,500 petitioner received in 1966 from Dallas Paint and Dry Wall Company, all of which petitioner contends was a loan, in petitioner's, Ann's, and Lois' income on a community property basis, respondent increased petitioner's income by $27,515.66, Ann's income by $7,338.82, and Lois' income by $9,170.22. By stipulation the parties agreed that these amounts should be $5,625.62, $43.51, and $3,331.88, respectively. They further agreed that there was no deficiency in Ann's income tax for 1966. In our view, the issue as to petitioner's receipts from Dallas Paint and Dry Wall Company has been disposed of by agreement of the parties. Furthermore, the issue which was settled after the trial is purely factual. Although we have found no facts on this issue since it was settled by the parties after the conclusion of the trial, in our view the evidence introduced at the trial shows that the entire $12,500 was, as petitioner contends, a loan and not income to petitioner. Decisions will be entered *228 under Rule 50 Footnotes
1. Cases of the following petitioners are consolidated herewith: Ann H. Webb (formerly Ann H. Folse), docket No. 5889-68; Parker C. Folse, Jr., docket No. 2708-70; Lois T. Folse, docket No. 2709-70; and Ann H. Webb (formerly Ann H. Folse), docket No. 2776-70. ↩
2. All references are to the Internal Revenue Code of 1954, as amended. ↩
3. Section 152(a) provides, in part, as follows: (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): (1) A son or daughter of the taxpayer, or a descendant of either, (2) A stepson or stepdaughter of the taxpayer, ↩
4. Section 152(e) provides in part as follows: (e) Support Test in Case of Child of Divorced Parents, etc. (1) General rule. - If - (A) a child (as defined in section 151(e) (3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody). (2) Special rule.- The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if - (A) (i) the decree of divorce or of separate maintenance, or a wrtitten agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and (ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or (B) (i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support. ↩