JEAN G. PUGEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Pugel v. Commissioner
Docket No. 5926-73.
United States Tax Court
T.C. Memo 1975-11; 1975 Tax Ct. Memo LEXIS 362; 34 T.C.M. (CCH) 43; T.C.M. (RIA) 750011; January 15, 1975, Filed George W. Steers and William C. Ruthford, for the petitioner. Charles L. Eppright, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $512.92 in petitioner's Federal income taxes for 1969. The issues for decision concern respondent's disallowance of dependency exemptions and child care deductions with respect to petitioner's three children. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulations of facts and attached exhibits are incorporated *363 herein by this reference. Petitioner resided in Seattle, Washington, at the time the petition herein was filed. She filed her Federal income tax return for the calendar year 1969 with the Western Service Center, Ogden, Utah. Petitioner and Stanley L. Pugel (hereinafter Stanley) were married on June 21, 1947. Three children, Gordon, Mary Lou, and Ronald, were born during this marriage. On April 19, 1966, petitioner and Stanley were divorced by decree of the King County Superior Court, which awarded custody of the children to petitioner and visitation rights to Stanley. Stanley was ordered to pay $70.00 per month for the support of each child and to be financially responsible for their medical and dental care. Each of the three children was in the legal custody of petitioner throughout the calendar year 1969, and each received over half of his support during that year from his parents. Both Mary Lou and Ronald were under the age of 13 throughout the year in issue. The parties concede that petitioner and Stanley, respectively, furnished at least the following amounts in support of each child during 1969: Gordon
Mary Lou
Ronald
Petitioner
$1,192.69
$1,025.48
$ 696.64
Stanley
$1,389.66
$1,284.66
1,248.66
*364 During 1969, five people were members of petitioner's household: petitioner, her three children, and her sister, Theresa Stafford. They occupied the family home which, prior to the divorce, was held by petitioner and Stanley as community property. The agreed fair rental value of the residence was $275 per month. On May 19, 1965 (several months before the divorce decree), the Superior Court on petitioner's motion ordered Stanley to "remain away from the family home and not interfere or molest the [petitioner] in any manner whatsoever," except in the exercise of certain visitation rights. On June 3, 1965, Stanley was held in contempt of the court's order for failure to remain away from petitioner's residence. On January 19, 1966, Stanley was restrained from entering the family house, calling for or returning the children at or to the front door, or communicating with petitioner other than as necessary in connection with visitation. Similar restraining orders were entered after the divorce, on September 30, 1966 and January 21, 1971. [1]
The decree *365 of divorce divided the community property in kind between petitioner and Stanley. It was silent as to the family home except that it ordered the sale thereof and the division of the proceeds as follows: $4,901.83 plus accrued interest to Stanley's mother in repayment of a loan, the next $9,355.00 to petitioner to make up for unequal division of the other property, and the balance to the parties in equal shares. No sale took place pursuant to this direction. The decree was modified in August 1971, again requiring immediate sale and ordering the appointment of a receiver to consummate the sale in the event Stanley failed to do so. In 1972, petitioner purchased all of Stanley's right, title and interest in the residence, for a stated consideration of $26,000.00. Petitioner also reimbursed Stanley at that time for all real estate taxes on the property which Stanley had paid subsequent to the entry of the decree of divorce. The $26,000.00 (less selling costs of $2,600.00) was allocated as provided in the decree, resulting in a net distribution of approximately $3,935.31 to Stanley and $13,290.31 to petitioner. Petitioner was employed as a clerk at the Veterans Administration Hospital *366 in Seattle. She worked on the day shift approximately 60 percent of the time and on the night shift the remaining 40 percent. Prior to June 1968, she paid a woman $100 a month plus room and board to care for her children while she was at work. Petitioner and her sister, Theresa Stafford, were concerned that this babysitter was not giving the children proper attention. Petitioner and Theresa therefore agreed that Theresa would move from Livermore, California and would receive free room and board from petitioner in exchange for taking care of the children in petitioner's absence. This arrangement continued throughout 1969. Living with petitioner was relatively inconvenient for Theresa both from a personal and employment standpoint. She was not used to sharing living quarters with four other people, and petitioner's home was also at a considerable distance from Theresa's Seattle friends. She took a cut in salary when she left Livermore, and was required to commute 100 miles per day until she changed jobs in August 1969. Since Theresa did not arrive home until 6:15 in the evening, petitioner paid other babysitters a total of approximately $470 during 1969 to take care of the two younger *367 children after school and to prepare dinner. During 1969, petitioner incurred out-of-pocket expenses of $3,038.66 in maintaining the household consisting of herself, her three children, and Theresa Stafford. Petitioner's two younger children were enrolled in St. Luke School during the year in question. Besides the regular tuition, petitioner was informed by the school that attendance required the family to make "[a] regular weekly * * * contribution by way of the Sunday Offertory Collection, according to the financial accountability between you and God." Petitioner contributed approximately $257 to the parish during 1969. OPINION Petitioner claims that she is entitled to dependency exemptions with respect to her three children and child care deductions with respect to her two younger children. Respondent determined that petitioner should not be treated as providing one-half of the support of any of her children in 1969, so that they were not her dependents during that year. He, therefore, disallowed all of those deductions. [2]
*368 The principal point at issue is who should be deemed to have furnished the portion of the agreed fair rental value of the family home, occupied by petitioner and the children, properly allocable to the support of the children. Petitioner contends that she should receive full credit for such allocable portion because she alone was entitled to the use and occupancy of the home. Respondent replies that, subsequent to the divorce, the home was owned by petitioner and Stanley as tenants in common and that each was therefore entitled to such use and occupancy, with the result that such allocable portion should be divided equally between them. The family home originally constituted community property of petitioner and Stanley. As a result of the divorce decree, which did not deal specifically with title to the home, they became owners thereof as tenants in common. ; . [3] Under the rule ordinarily applicable in such a situation, half of the fair rental value of lodging occupied by children of the marriage is considered to have been supplied *369 by each parent. Cf. (C.A. 4, 1970), affirming per curiam ; . Where, however, the decree of divorce or separate maintenance provides that one parent shall be entitled to the exclusive use and occupancy of the premises, that lodging is deemed to have been furnished entirely by such parent. ; Delbert. Cf. (N.D. Ohio, 1970).[4]
The task which confronts us is to determine what provision, if any, was *370 made in the divorce proceeding herein with respect to the use and occupancy of the family home. In discharging this task, we are required to grapple with a decree in which the local divorce court unfortunately did not articulate its action in regard to the family home with precision and clarity -- a situation which has plagued us in other areas of the tax law dealing with the severance or modification of the marital relationship. Compare . The divorce decree herein, by itself, simply directed that the family home be sold and specified the manner in which proceeds of such sale were to be divided between petitioner and Stanley. But the findings of fact and conclusions of law accompanying the decree made it clear that petitioner would not be required to pay rent pending the sale. We think that this provision is significant. As a tenant in common of the family home, petitioner was entitled to the use and occupancy coextensively with Stanley and, at least in the absence of an ouster of Stanley, would not have been required to pay rent. Compare , with . *371 Thus, either the inclusion of the provision relieving petitioner from the obligation to pay rent was a meaningless act on the part of the divorce court (a conclusion which we would be hesitant to reach) or it was designed to relieve petitioner from any claim of ouster by Stanley. Under the circumstances, we think that the provision dispensing with petitioner's obligation to pay rent should be equated with a direction that she was to have the exclusive use and occupancy of the family home until it was sold. We are buttressed in our analysis by the various protective orders of the divorce court barring Stanley from the house. While we hesitate to accord these orders a status whereby they would be considered as affecting the property rights as such of petitioner and Stanley, [5] we think that they may appropriately be taken into account in determining the scope of the provisions of the divorce decree. [6]
*372 In short, on the basis of the record herein as a whole and the inferences which can be drawn therefrom, we are satisfied that the instant situation falls within the ambit of , and , and that accordingly petitioner is entitled to the full amount of the portion of the agreed fair rental value of the family home allocable to the children. Since the amount involved ($660 for each child) is sufficient to carry petitioner over the requisite level, we hold that she is entitled to the dependency exemptions for each of the three children. In view of our holding, we need not reach the further questions relating to the treatment as support via child care expenses of petitioner's out-of-pocket household expenses attributable to her sister (cf. [7] or relating to how certain church contributions by petitioner should be allocated in computing the amount of support. Our holding that petitioner is entitled to dependency exemptions for the children is also determinative of her right to deduct $470 as agreed child care expenses under section 214. *373 To reflect our holding herein and various other concessions of the the parties, Decision will be enteredunder Rule 155.
Footnotes
1. The order dated January 21, 1971 is a temporary restraining order; nothing appears in the record as to its final disposition.↩
2. Sections 151(e), 152, and 214(d)(1). All statutory references are to the Internal Revenue Code of 1954, as amended and in force during the year in issue.↩
3. Subsequent orders of the divorce court in the instant case confirmed that such ownership resulted.↩
4. See ; ; John J. Frick,↩ T.C. m/emo. 1963-229. To the extent that , purports to qualify the "use and occupancy" exception to the ordinary rule, it does so within the specific confines of Oklahoma law.
5. Compare (C.A. 2, 1972), affirming per curiam ; . We note that in both of these cases we were dealing with a situation where the protective order in question was issued by a court which did not have jurisdiction over actions for divorce of separate maintenance. See . Here the divorce decree and protective orders were issued by the same court. ↩
6. The pre-divorce decree protective orders may also be used as an aid to interpretation of the decree, even though they were apparently merged into, and became inoperative at the time of, the decree. See .↩
7. See also .↩