WILLARD T. AND SONJA B. RITCHIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ritchie v. Commissioner
Docket Nos. 6269-78, 6270-78.
United States Tax Court
T.C. Memo 1979-493; 1979 Tax Ct. Memo LEXIS 37; 39 T.C.M. (CCH) 668; T.C.M. (RIA) 79493; December 6, 1979, Filed *37 Both former spouses claimed entitlement to the exemption deductions with respect to their children. Petitioner husband was the non-custodial parent. Held: On behalf of former wife, in effect, respondent introduced evidence which showed by a clear preponderance of the evidence that former wife provided more for the support of the children than did petitioners. Held further: Petitioners are not entitled to the exemption deductions in issue. Sec. 152(e), I.R.C. 1954. Willard T. Ritchie and Sonja B. Ritchie, pro se. Joyce H. Errecart, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent, by letter dated March 31, 1978, determined deficiencies in income taxes paid for petitioners' taxable years ended December 31, 1974 and December 31, 1975 in the respective amounts of $1,137.36 and *39 $2,308.34. Petitioners filed separate petitions for each taxable year in issue. Petitioners' petition with respect to their taxable year 1974 was assigned docket No. 6269-78. Petitioners' taxable year 1975 was assigned docket No. 6270-78. These two docket numbers were consolidated for trial, briefing and opinion on respondent's motion granted April 24, 1979. After concessions [1] the only issue for our decision herein is whether petitioners are entitled to certain dependency exemption deductions for the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Willard T. and Sonja B. Ritchie resided in Gaithersburg, Maryland at the time they filed their *40 petition herein. Petitioners filed timely joint Federal income tax returns, on the cash basis, for each of the taxable years in issue with the Philadelphia iService Center of the Internal Revenue Service. As petitioner Sonja B. Ritchie is a party hereto only by virtue of having filed jointly with her husband, "petitioner" as used herein shall refer solely to Willard T. Ritchie. Petitioner was formerly married to Norma J. Ritchie (Norma). Three children were born of that marriage: Deborah, born in 1956; Patricia, born in 1958; and Kathleen, born in 1964. On June 29, 1971 petitioner and Norma executed a separation agreement. This agreement provided in relevant part as follows: 2. The Husband agrees to pay to the Wife, for the support and maintenance of the minor Children, the sum of One Hundred, Twenty-Five and no/100's ($125.00) Dollars per week. As each Child attains her majority, marries, becomes self-supporting, or is otherwise emancipated, or upon the death of the Husband, whichever shall first occur in point of time, the obligation of the Husband for support payments for that particular Child shall cease, and in this regard, the total weekly payment to be made on account *41 of support and maintenance shall be decreased by Forty-One and Thirty-Three/100's ($41.33) Dollars per week as each child attains her majority/or is otherwise emancipated. The Husband shall be entitled to claim all Children as dependents for tax purposes. Paragraph 16 of the separation agreement provided that the agreement could be merged into any later decree of divorce on the option of either party. On September 29, 1971 Norma filed a petition in the Montgomery County Circuit Court claiming that petitioner was in arrears in his payments under their agreement. On February 14, 1972 the circuit court ordered petitioner to pay child support of $125 per week, plus certain arrearages. On November 30, 1972 the circuit court issued an order reducing petitioner's total weekly child support obligation to $82.50. On June 1, 1973 the circuit court entered a Decree of Divorce. This Decree ordered that petitioner pay $82.50 per week to Norma for the support of the parties' children "pursuant to the order of this Court dated November 30, 1972." Neither party ever exercised his option to merge their separation agreement into this Decree. Prior to their divorce petitioner and Norma owned *42 a home located on Adelphi Road in Adelphi, Maryland (hereinafter the Adelphi Road house). The fair rental value of this house, unfurnished, was $4,050 per year during 1974 and 1975. Paragraph 4 of the Couple's separation agreement provided as follows with respect to this house: 4. * * * the Wife shall have exclusive right of possession in and to this real property, and agrees hereby to be responsible for all payments on this property, as they become due, including, but not limited to, house payments, and sums due for utilities, upkeep and maintenance. The Husband and Wife will share equally in the annual payment of real estate taxes as they become due. At such time as the Wife wishes to place the house for sale, she may do so. However, the house shall be sold at such time as the Wife remarries or when the youngest child is emancipated, whichever shall fairst occur, as set forth in Paragraph 2 above. The Wife shall be solely responsible for repairs and improvements. Petitioner provided cash child support payments in the amounts of $3,367.50 in 1972 and $4,221.54 in 1973. During 1972 and 1973 Norma and the couple's three children resided in the Adelphi Road house. In *43 1974 petitioner provided cash child support payments pursuant to the Decree of Divorce consisting of 51 payments of $82.50 each or $4,207.50. In total petitioner provided $4,399.50 in support to his children in 1974 or $1,466.50 for each of his three daughters. In 1975 petitioner made 53 payments of $82.50 totaling $4,372.50. Petitioner's total payments for the support of his children in 1975 equaled $4,502.50 or $1,500.83 per daughter. In 1974 Norma spent $2,093 in general expenses for each daughter (exclusive of any amount attributable to the fair rental value of the Adelphi Road house) for a total of $6,279: 1974 Expenditures per child
Amount
Food $ 500
Utilities
300
Clothes
300
Drugs
50
Recreation
175
Car maintenance
14
Car and house insurance
70
Books and magazines
4
Car payments
130
Doctors
250
Car operation
180
Dry cleaning
6
Veterinarian
14
Birthday and Christmas
100
$2,093
In addition Norma spent the following amounts which were specifically allocable to the daughters shown: Deborah $1,500, Kathleen $150, and Patricia $140. In 1975 Norma spent $1,846 on general expenses for each daughter (exclusive of any amount attributable *44 to the fair rental value of the Adelphi Road house) for a total of $5,538. This total may be broken down as follows: 1975 Expenditures per child
Amount
Food
$ 500
Utilities
300
Clothes
375
Drugs
50
Recreation
150
Car maintenance
12
Car and house insurance
75
Car payments
60
Car operation
200
Dry cleaning
10
Veterinarian
14
Birthday and Christmas
100
$1,846
In addition Norma spent the following amounts which were specifically allocable to the daughters shown: Deborah $1,300, Kathleen $160, and Patricia $280. In 1974 and 1975 all three girls were in the custody of and resided with Norma in the Adelphi Road house. At various itimes one or more of the girls were employed in part-time jobs. Patricia and Deborah each earned $320 in 1974. In 1975 Patricia earned $320 and Deborah earned $884. All the children received at least half their support from their parents during the taxable year in issue.Deborah was a "student" within the meaning of section 151 during 1975. OPINION The only issue for our decision herein is whether petitioner is entitled to any or all of the dependency exemption deductions for his three daughters for the taxable *45 years in issue. At all relevant times section 151 provided as follows: SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions.--In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * *
(e) Additional Exemption for Dependents.-- (1) In General.--An exemption for $750 for each dependent (as defined in section 152)-- * * *
(B) who is a child of the taxpayer and who (i) has inot attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. At all relevant times section 152 provided as follows: SEC. 152. DEPENDENT DEFINED. (a) General Definition.--For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): (1) A son or daughter of the taxpayer * * * * * *
(e) Support Test in Case of Child of Divorced Parents, Et Cetera.-- (1) General Rule. *46 --If-- (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced * * * and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent * * *. (2) Special Rule.--The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if-- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and (ii) scuh parent not having custody provides at least $600 for the support of such child during *47 the calendar year, or (B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support. Clearly, the general rule of section 152(e)(1) requires that we hold against petitioner, as the non-custodial parent, unless he can show that he falls within one of the two special rules of section 152(e)(2). On brief, petitioner specifically disclaimed any intent to rely upon the terms of the separation agreement as a basis for his claim to the exemptions in issue. In doing so, petitioner has conceded the nonapplicability of the special rule of section 152(e)(2)(A). The concession is well taken given the fact that, in a Summary Opinion of this Court dated *48 September 6, 1977, we have previously decided this very issue adversely to petitioner for his taxable years 1972 and 1973. Petitioner has preferred to hang his hat on his argument that he is entitled to the exemptions in issue because he provided more suport for each of his three children during the years in issue than did Norma. We interpret petitioner's position to be that he falls within the special rule of section 152(e)(2)(B). We view, therefore, petitioner's argument as being that he (1) provided $1,200 or more for the support of each child, and (2) that it has not been clearly establish that Norma provided more for the support of each child than did he. Respondent argues simply that he has clearly established that Norma provided more support for the couple's children than did petitioner. Thus our decision herein must turn on whether respondent, in fact, with the help of the testimony of the custodial former wife, has established by a clear preponderance of the evidence that Norma provided more for the support of each of the couple's children during the taxable years in issue than did petitioner. Section 152(e)(2)(B), Labay v. Commissioner,55 T.C. 6, 11, 13 (1970), *49 affd. per curiam 450 F.2d 280 (5th Cir. 1971), section 1.152-4(d)(3), Income Tax Regs.
We have found that petitioner provided in excess of $1,200 support per child during each of the taxable years in issue. We believe, however, that a clear preponderance of the evidence indicates that Norma spent more for the support of each child than did petitioner during each of the taxable years before us. Applying principles analogous to those stated in Cohan v. Commissioner,39 F.2d 540, 544 (2nd Cir. 1930), we have allowed some of Norma's claimed support expenses in full and have allowed other only partially or not at all. In determining the total amount of support provided by petitioner to his children we have taken into account only such money orders as were actually mailed during the taxable year plus any such cash payments as petitioner was able to show. Thus, for example, some money orders were dated in 1975 but were not mailed until 1976. The fact that petitione may have been obligated to pay an amount in 1975 for his children's support does not automatically require that that amount be included as a support payment in that year. Rather the test *50 is the year in which the support was actually received from the taxpayer. Seraydar v. Commissioner,50 T.C. 756, 761 (1968). Clearly, petitioner could not have provided an amount for the support of his children, and his children could not have received any amount from his for their support, until he actually mailed or otherwise paid the amount. [2] Of course, to the extent petitioner actually paid amounts for his children's support, each payment is deemed made for each child's benefit equally, absent some evidence to the contrary.
Kotlowski v. Commissioner,10 T.C. 533, 536 (1948). *51 The only item of support claimed by Norma which petitioner seriously challenged is her claim to the whole of the fair rental value of the couple's Adelphi Road house as her exclusive support item. All petitioner's other objections to Norma's evidence went to the weight to be given such evidence by the Court and have been duly reflected in our Findings. The fair rental value of the Adelphi Road house, unfurnished, was $4,050 per year during each of the taxable years in issue.In the absence of an agreement or court order to the contrary this Court would presume that each joint/tenant spouse had an equal right to the use and occupancy of jointly owned real property, and that, therefore, this use and occupancy was provided as a support item equally be each parent. Lindberg v. Commissioner,46 T.C. 243, 247 (1966), cf. Gilliam v. Commissioner,429 F.2d 570 (4th Cir. 1970), affg. per curiam a Memorandum Opinion of this Court. Petitioner argues that as he is still a joint tenant in the Adelphi Road house he should be credited with some part of that house's fair rental value. Unfortunately for petitioner, the separation agreement granted exclusive *52 use and possession of this house to Norma. Under Maryland law the separation agreement is viewed as a contract subject to the same general rules governing other contracts. Pumphrey v. Pumphrey,11 Md. App. 287, 273 A.2d 637, 639 (1971). This contract was still in full force and effect, at least in relevant part, during the taxable years before us. As Norma had the exclusive right to possess, use and occupy the house, it is she alone who could provide this possession, use and occupancy to her children. Lindberg v. Commissioner,supra,Brunner v. Commissioner,39 T.C. 534, 537-538 (1962), Wood v. United States,287 F.Supp. 90, 92 (D. Or. 1968). We conclude that Norma should be credited with providing 25 percent of the fair rental value of the house or $1,012.50 per year, to ach child for that child's support. [3]
*53 Including, therefore, each child's aliquot share of the fair rental value of the Adelphi Road house in the support computation, we conclude that in 1974 Norma spent $4,605.50 for Deborah's support, $3,255.50 for Kathleen's support, and $3,245.50 for Patricia's support. These amounts must be treated as received from petitioner to the extent that petitioner provided support for each child. Section 152(e)(2), section 1.152-4(d)(4), Income Tax Regs. Thus in 1974 each parent is deemed to have provided the following amounts for support: 1974
Norma
Petitioner
Deborah
$3,139
$1,466.50
Kathleen
1,789
1,466.50
Patricia
1,779
1,466.50
In 1975 we conclude that Norma spent $4,158.50 for Deborah, $3,018.50 for Kathleen, and $3,138.50 for Patricia. Petitioner supplied $1,500.83 per child. Thus each parent provided the following amounts of support to each child: 1975
Norma
Petitioner
Deborah
$2,657.67
1,500.83
Kathleen
1,517.67
1,500.83
Patricia
1,637.67
1,500.83
Respondent has clearly established that Norma provided more support to each of the couple's children in both taxable years than did petitioner. We have *54 already found that the children's parents provided more than one half their children's support during the taxable years in issue. As neither of the two special rules of section 152(e)(2) applies, the general rule of section 152(e)(1) dictates that all the exemptions at issue go to the custodial parent. Decision will be entered under Rule 155.
Footnotes
1. Petitioners have conceded all respondent's adjustments to their income for both taxable years in issue, including those in respect of their claimed employee business expense deductions, miscellaneous employee business expense deductions, medical deductions, and student expense deductions. They have also conceded respondent's adjustments to their self-employment tax.↩
2. We note that in the companion case of Ritchie v. Commissioner,T.C. Memo 1979-492 decided this day, the question of whether Norma was entitled to the three dependency exemptions in issue for her taxable year ended December 31, 1974 was in issue. In that case respondent and Norma stipulated that she received 49 money orders from petitioner in 1974.Certainly what respondent stipulated in another case is irrelevant to the case before us and certainly cannot bind petitioner. We note, in any event, that the discrepancy of two payments does not effect the outcome of either this case or Norma's. Ritchie v. Commissioner,supra.↩
3. To the extent that our case in Carter v. Commissioner,62 T.C. 20 (1974), purports to qualify the "use and occupancy" exception to the ordinary rule, it does so within the specific confines of Oklahoma Law. Pugel v. Commissioner,T.C. Memo 1975-11 (34 T.C.M. 43↩, 45 at n. 4, 1975 P-H T.C.M. par. 75,011).